534 A.2d 563

Skippack Community Ambulance Association, Inc., Appellant *v.* Township of Skippack, Appellee.

Argued April 8, 1986, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*Philip R. Detweiler, Philip R. Detweiler & Associates, P.C.,* for appellant.

*Alan E. Boroff,* with him, *Eileen P. Grant, Boroff, Harris & Heller, P.C.,* for appellee.

OPINION BY JUDGE DOYLE, December 8, 1987:

Skippack Community Ambulance Association, Inc. (Association) appeals from an order of the Court of Common Pleas of Montgomery County granting a preliminary injunction in favor of the Township of Skippack (Township).

Until this litigation, the Association, a Pennsylvania non-profit corporation, had been providing ambulance service to the Township since at least 1965. The Skippack Ambulance Corps (Corps) is the operational division of the Association, consisting of about thirty volunteers who staff and operate the ambulances.

On January 28, 1985, an ongoing dispute between the Association's board of directors and the individual Corps members culminated in the members relinquishing their equipment and keys to the ambulance building. Shortly thereafter, on January 30, the Association changed the locks on the ambulance building, effectively locking out the dissident members of the Corps. Talks among the Association, the members of the Corps and the Township failed to resolve the dispute.

The Township, fearing that the dispute would cause the Association to be unable to render adequate emergency ambulance service to the Township residents, filed a complaint in equity on February 7, 1985 in the court of common pleas seeking an injunction requiring the Association to provide new keys to members of the Corps, to return all equipment to Corps members, and to return Corps members to the status they held on January 28, 1985. The next day, the court of common pleas entered a temporary restraining order and, after a hearing, issued a preliminary injunction on February 28, 1985 granting the above-requested relief. The Association appeals. We find it necessary to consider only one issue raised by the Association's appeal. Since we hold that the Township lacked standing to seek an in-

junction, we do not consider any of the Association's other contentions.

With regard to the standing issue, the Township contends that it has standing here by virtue of Section 702, cl. XLVII, of the Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65747, which gives the Township the power "[t]o take all needful means for securing the safety of persons or property within the township." The contention of the Township is incorrect. Section 702, cl. XLVII, has never been interpreted as affording a second class township an express or implied mandate granting it capacity to sue generally for the betterment or protection of its citizens. Rather, "[a]n examination of Section 702 indicates that its language is most inappropriate and inadequate to evidence any intent on the part of the legislature to delegate to second class townships vast and extensive police powers." *Commonwealth v. Ashenfelder*, 413 Pa. 517, 522, 198 A.2d 514, 516 (1964).

> Moreover, it is well settled that townships, political subdivisions of the Commonwealth, possess only such powers as have been granted to them by the legislature, either in express terms or which arise by necessary implication or are incident to powers expressly granted or are essential to the declared objects and purposes of the townships.

*Id.* at 521, 198 A.2d at 515.

Since the Township lacks any statutory mandate, express or implied, to sue generally for or on behalf of its citizens, the Township therefore must possess a sufficient "interest" in its own right under the general principles of law relating to standing. *Township of Upper Moreland v. Department of Transportation*, 48 Pa. Commonwealth Ct. 27, 409 A.2d 118 (1979). The basic principles of standing were enumerated by our

Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). In *William Penn*, the Court held that standing requires a party to show a substantial, direct and immediate interest in the subject matter of the litigation. "Substantial" means "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Id.* at 195, 346 A.2d at 282. "Direct" means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. *Id.* "Immediate" means something other than a remote consequence, the concern being focused on the nature and proximity of the action and injury to the person challenging it. *Id.* at 197, 346 A.2d at 283.

The Township asserts it satisfies these standards in part by relying on this Court's decision in *Township of North Fayette v. Commonwealth*, 62 Pa. Commonwealth Ct. 242, 436 A.2d 243 (1981), which might seem to suggest that a second class township has standing in a suit where it can show that the impending injury to the *township* will adversely affect its responsibility to carry out local governmental functions. The Township contends that since the dispute between the Association and the Corps adversely affected the quality of emergency ambulance service in the township and because Section 702, cl. XLVII, empowers the Township to take action to protect its citizens, the Township, in its governmental capacity, has a sufficient interest, thus satisfying the *William Penn* standards. To further show that it has a direct, substantial and immediate interest, it points to the fact that it allocates money to the Association to provide ambulance service[1] and that the Town-

---

[1] The trial court found that the township contributed "between $15,000 and $20,000 per year to [The Association] for maintenance and operation of ambulance service." *See* Section 702, cl. XLVI of

ship is statutorily liable for workmen's compensation benefits to volunteer ambulance workers injured on the job.[2] We must disagree with the Township's analysis and argument.

Our decision in *North Fayette* must be read in light of the holding in *William Penn* that a litigant must hold a direct, substantial and immediate interest *in the subject matter of the dispute*. *William Penn*, 464 Pa. at 191-202, 346 A.2d at 280-86.[3] The Township here has failed

---

the Code, 53 P.S. §65746. The president of the Association's board testified that in 1984, of the $20,000 allocated, $15,000 went to the Association and $5,000 went to the corps members; in 1985 all $20,000 was allocated to the Corps Members.

[2] *See* Section 601 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1031 (a)(2). Section 601 was added by Section 15 of the Act of December 5, 1974, P.L. 782.

[3] The Township's position in this case relies heavily upon our decision in *Township of North Fayette v. Commonwealth*, 62 Pa. Commonwealth Ct. 242, 436 A.2d 243 (1981). This Court, sitting in its original jurisdiction, denied standing to a second class township to challenge a decision by the Department of Transportation to detour traffic through the township because of bridge repairs. The Court recognized that while Section 702, cl. XLVII, give a township the power to protect its citizens, filing suit against the Commonwealth was not a proper exercise of this power. *Id.* at 246-47, 436 A.2d at 245; *Commonwealth v. Ashenfelder*, 413 Pa. 517, 198 A.2d 514 (1964). In *North Fayette*, the legislature had clearly vested in the Department of Transportation the authority to design, designate and maintain safe detours, thereby pre-empting action by the township. North Fayette, 62 Pa. Commonwealth Ct. at 246-47, 436 A.2d at 245. For a similar analysis, *see Township of Upper Moreland v. Department of Transportation*, 48 Pa. Commonwealth Ct. 27, 409 A.2d 118 (1979).

The Township aptly distinguishes *North Fayette* from the instant case, noting that the issue of state pre-emption of local government power addressed in *North Fayette* is not present in a case where, as here, the legislature neither imposes statutory provisions regulating the operation of emergency ambulance services in a second class township nor gives such regulatory power to an administrative agency. The Township, therefore, contends it has a duty to

to show that *its* interest in the subject matter of the dispute *between the Association and the Corps* is direct, substantial or immediate. A township lacks standing to seek an injunction to enjoin a dispute between private parties where *it* has no direct interest in the subject matter of the dispute; nor would the Township be adversely affected by the resolution of the merits of the dispute either way, no matter how serious the dispute, because *its* interest is not ·substantial or immediate. Since the Township has throughout this litigation conceded it has no interest in the merits of the dispute underlying this litigation, and that its only concern would be its interest in seeing that the dispute did not adversely affect ambulance service in the Township, it was without standing to obtain the preliminary injunction issued by the trial court. Simply put, the Township lacked a substantial, immediate interest in the dispute between the Association and the Corps.[4]

---

protect its citizens from inadequate ambulance service and, because the state has not pre-empted its power in the field, has standing to do so. Although the Township argument is novel, it is, nonetheless, unpersuasive.

[4] In the four years immediately preceding the suit, the Township contributed to the Ambulance Association. When the controversy erupted between the directors and some of the Corps members, the Township *held back* $5,000 (of the $20,000 appropriated) and gave that amount *to the members.* The Township's suit was filed in February of 1985; in that year it gave all $20,000 to the corps members and *none* to the Association. All of the funds however, came from the federal government; there were no local· tax dollars involved. The Township applied for these funds at the behest of the Association.

Second Class Townships are, of course, permitted to contribute to many non-profit associations or corporations, such as community nursing services, 53 P.S. §65757; organizations to acquire and maintain historical properties, 53 P.S. §65760; urban common carrier mass transportation authorities, 53 P.S. §65764a; tourist promotion agencies, 53 P.S. §65770; non-profit art corporations, 53 P.S.

Accordingly, the order granting the preliminary injunction, the only matter before us on appeal, is reversed and the case returned for disposition by the court of common pleas. *See* Pa. R.A.P. 2573.

### ORDER

NOW, December 8, 1987, the Order of the Court of Common Pleas of Montgomery County, Civil Division No. 85-01999, dated February 28, 1985, is hereby reversed.

---

§65773; etc. Although the Townships would have a legitimate interest in all of these endeavors, that interest alone would not grant them standing and party status, so as to inject themselves into disputes which are more properly litigated in Orphans' Court between the competing factions.