604 A.2d 298

The PITTSBURGH TRUST FOR CULTURAL RESOURCES (doing business as the Pittsburgh Cultural Trust), and the Penn–Liberty Association,

v.

ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH and Jerome L. Goldstein, Carl Stone and Debra Stone and City of Pittsburgh,

Appeal of Jerome L. GOLDSTEIN, Appellant.

Carl STONE and Debra Stone, Appellants,

v.

The PITTSBURGH TRUST FOR CULTURAL RESOURCES (doing business as the Pittsburgh Cultural Trust), and the Penn–Liberty Association and Zoning Board of Adjustment of the City of Pittsburgh and Jerome L. Goldstein and City of Pittsburgh, Appellees.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Feb. 14, 1992.

Reargument Denied April 22, 1992.

504

506

Joseph A. Katarincic, for appellants.

Joel P. Aaronson, for appellees.

Gretchen G. Donaldson, Associate Sol., for intervenor-appellee, City of Pittsburgh.

Before COLINS and PALLADINO, JJ., and BARRY, Senior Judge.

COLINS, Judge.

Jerome L. Goldstein, Carl Stone and Debra Stone (owners) appeal a decision of the Court of Common Pleas of Allegheny County (Common Pleas) reversing a favorable decision of the Pittsburgh Zoning Board of Adjustment (Board) that granted them a special exception and variances necessary to establish an amusement arcade in an area in the City of Pittsburgh known as the Golden Triangle.

## BACKGROUND

Owners applied for a special exception to allow them to relocate an amusement arcade to a one-story building situate in a C–5 District (Golden Triangle primary business district known as Penn–Liberty), within 500 feet of the Benedum Center (a concert hall and cultural center). In the Penn–Liberty area, amusement arcades are permitted solely

as special exceptions pursuant to Section 909.06(b)(26) of the Pittsburgh Zoning Ordinance (Ordinance) that provides:

A. The building shall not be located within a Council designated 'Historic District' as per Section 1007.02 (Section 513.0) or within an 'AI' Commercial–Residential Associated District;

B. When the arcade is located in a building containing residential occupancy, the space to be occupied for arcade shall not be located directly above or beneath the residential occupied space;

C. The zoning lot shall not adjoin any property located in an 'AI', 'R' or Council designated 'Historic District' as per Section 1007.02 (Section 513.0) and shall not be within a distance of 300 feet from such Districts as measured along a straight line projected from each pedestrian entrance or exit of the subject occupancy to the nearest boundary of the 'AI', 'R' or 'Historic District';

D. The building shall not be located within a distance of 500 feet measured along a straight line projected from each pedestrian entrance or exit of the subject occupancy to the nearest building wall (boundary line for park or playground) of any of the following:

1. Other amusement arcade;

2. Church or synagogue;

3. Elementary or secondary school;

4. Public library or museum;

5. Concert hall or cultural center;

6. Senior citizen center or designated housing for elderly building;

7. Community club or community facility;

8. Public park or playground.

E. Disclosure shall be made regarding the intent to sell alcoholic beverages for consumption on the premises;

F. Automobile parking space shall be provided on the basis of one (1) stall for each fifty (50) square feet of net floor area in the C3 and C4 Districts;

G. Such use shall not be conducted in any manner that provides the observation of any material depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas', from any public right of way. This provision shall apply to any display, decoration, sign or show window;

H. The Board shall determine that the proposed use shall not be detrimental to the community, taking into consideration traffic generation, the relationship of the proposed use to surrounding structures; the parking facilities; the hours of operation, and the volume of people.

(Ordinance 5–1983, effective February 21, 1983).

Owners sought variances that were necessary because the proposed amusement arcade use did not satisfy all the requirements for a special exception. On January 12, 1990, the Board granted owners the special exception and variances requested subject to specific, enumerated conditions. On February 9, 1990, the Pittsburgh Trust for Cultural Resources (Trust) and The Penn–Liberty Association (Association) appealed the Board's decision to Common Pleas. Owners filed a petition to intervene, which was granted on February 20, 1990, and, on February 27, 1990, the City of Pittsburgh (City) filed a notice to intervene as intervenor/appellant. On March 1, 1990, owners filed a motion to quash the appeal filed by the Trust and the Association, alleging lack of standing.

At the conclusion of a hearing on the motion to quash, held on March 20, 1990, Common Pleas held that the Trust had established "appearance standing," and directed all parties to submit briefs addressing this issue, along with the issue of whether the Trust and the Association had established "aggrieved party standing" and addressing the merits of the appeal. Briefs were filed on behalf of the Trust, the Association and the City, all of which opposed the Board's granting owners the special exception and variances. On May 22, 1990, owners filed a motion, with a supporting brief, to quash the City's intervention as being untime-

ly, to which the City filed a responsive brief. On December 18, 1990, Common Pleas rendered an order that: (1) denied owners' motion to quash the appeal filed by the Trust and the Association; (2) denied owners' motion to quash the City's intervention; and (3) reversed the Board's decision granting owners the special exception and variances. It is from this order that owners appeal and argue that: (1) neither the Trust nor the Association had standing to appeal to Common Pleas; (2) the City failed to timely intervene and, as a result, did not have standing to appeal to Common Pleas; and (3) substantial evidence in the record supports the Board's decision granting owners the special exception and variances.

## SCOPE OF REVIEW

The foregoing issues require a dual scope of review. First, because Common Pleas considered evidence on the standing issue presented for the first time, which the Board had not addressed, we must determine whether Common Pleas committed an abuse of discretion or error of law in its resultant legal conclusions on this issue. *Claremont Properties, Inc. v. Board of Township Supervisors of Middlesex Township,* 118 Pa.Commonwealth Ct. 527, 546 A.2d 712 (1988). Second, as to the Board's granting owners the special exception and variances, Common Pleas took no additional evidence and, therefore, this Court's scope of review is limited to a determination of whether the Board abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence of record. *Vanguard Cellular System, Inc. v. Zoning Hearing Board of Smithfield Township,* 130 Pa.Commonwealth Ct. 371, 568 A.2d 703 (1989), *petition for allowance of appeal denied,* 527 Pa. 620, 590 A.2d 760 (1990).

## OWNERS

The first issue raised by owners is whether the Trust and the Association had standing to appeal the Board's decision to Common Pleas when, according to own-

ers, they are merely community and citizen groups that failed to establish what common pleas referred to as "aggrieved party standing." Pursuant to 2 Pa.C.S. § 752 regarding local agency adjudications, aggrieved party standing requires: (1) the party aggrieved to have a "direct interest in such adjudication," and that such interest be "substantial;" and (2) a showing of harm to that direct substantial interest caused by the matter complained of. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). It is owners' contention that these criteria were not established, either by the Trust through its stated goal of encouraging uses conducive to expanding the arts, or by the Association through its stated purpose of upgrading the quality of commercial uses in the Penn–Liberty District.

Secondly, in their motion to quash the City's intervention, owners argue that, because the City failed to file a notice of intervention within the appeal period and failed to file a timely notice of appeal, the City lacked standing to appeal this matter to Common Pleas. Although Common Pleas found that owners waived the foregoing objections by their delay in objecting to the City's February 27, 1990 notice of intervention until May 22, 1990, owners insist that the City's failure to file a timely notice of appeal is an irremediable "jurisdictional defect that cannot be waived nor circumvented by filing a notice of intervention."

Finally, owners contend that even if this Court finds that the parties do in fact have standing, and proceeds to the merits, substantial evidence in the record supports the Board's grant of the special exception and additional variances under the *de minimis* doctrine. In support of this argument, owners maintain that their proposed arcade use has only minor deviations from the ordinance and that strict compliance is not necessary to protect public policy interests, especially since, they allege, other "non-historic" buildings in the same district have been "excepted" from strict compliance with the historic district designation.

Owners further justify their qualification for a variance both on the basis of unique physical characteristics of Benedum Center, vis-a-vis the subject property, and on the basis that denying the variance would cause them unnecessary hardship by depriving them of reasonable use of the subject property. Specifically, owners argue that an extension of Benedum Center reaches into Liberty Avenue, thereby creating the distance problem of the arcade being less than 500 feet from the concert hall. Owners base their hardship contentions on having a modern structure and modern business operation located within an historic district.

In this regard, owners emphasize that: (1) the variances granted by the Board ensure that the proposed amusement arcade will be moved away from the stage door of Benedum Center, out of an historic structure into a new building; and (2) the Board, as fact finder, before approving the special exception and variances, considered the proposed arcade's operating hours, as well as its impact upon surrounding structures, pedestrian activity, and traffic congestion, and concluded that the arcade would not have a deleterious effect upon the public interest.

## THE TRUST AND THE ASSOCIATION

In response to owners' argument, the Trust and the Association first argue that because Common Pleas received additional evidence beside the record created before the Board (specifically, three letters addressing the standing of the Trust and the Association to appeal the Board's decision), it is the Common Pleas decision and not that of the Board that is properly before this Court for appellate review.

Secondly, the Trust and the Association contend that they clearly established "appearance standing" by unequivocally appearing at the hearing as parties "opposed" to the relief requested by owners, even without any showing of economic interest in neighboring property or any unique harm sustained. They further contend that "derivative standing"

for an association may be established as follows: (1) through the interest of, or injury to, one of its members; or (2) by showing that the organization has an interest "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."

Next, the Trust points out that: (1) it is organized to promote the development of the cultural district and occupies Benedum Center, a "concert hall and cultural center" located approximately 200 feet from the subject property; (2) it has a substantial financial investment in the designated Penn–Liberty historic district, and owns or occupies property along Penn and Liberty Avenues; and (3) owners' proposed amusement arcade would violate Section 909.-06(b)(26) of the Ordinance which expressly prohibits locating amusement arcades within 500 feet of a concert hall or cultural center.

The Association contends that it has standing, based on the fact that its purpose is to encourage "quality commercial development" in the Penn–Liberty area of the subject property, and that, consequently, it is "within the zone of interest protected by Section 909.06(b)(26) of the Ordinance, prohibiting amusement arcades in historic districts." Additionally, the Association avers that it represents approximately 60 dues paying property owners and tenants in this area, whose proprietary and financial interests will be harmed by the establishment of an arcade in this area.

Finally, the Trust and the Association argue that owners failed to meet their burden of proof of entitlement to the special exception and variances requested for the arcade. It is their position that owners did not satisfy at least two of the eight criteria listed in Section 909.06(b)(26) to obtain a special exception, thereby rendering their request essentially one for a use variance. In this respect, the Trust and the Association contend that owners had to prove the subject property could not be used for any other purpose except at prohibitive expense, causing them undue hardship, which requirement, they allege, owners failed to meet. Moreover, they argue that owners never represented to the Board that

their request was for a *"de minimis"* variance and, therefore, should not be permitted to so argue before this Court, especially since the deviation at issue here, 200 rather than 500 feet from Benedum Center, is too great a dimensional variance to qualify as *de minimis.*

## CITY

The City, as intervenor, argues that owners cannot now object to the City's standing to intervene because of the substantial length of time they allowed to elapse between the date of the City's notice to intervene, February 27, 1990 and May 22, 1990, the date on which owners filed their motion to quash the City's intervention. Additionally, the City contends that Common Pleas correctly reversed the Board's decision, because owners failed to meet the burden of proving unnecessary hardship by establishing that the subject property would be worthless for any other permitted use if the requested variance were not granted, or that the 500 foot requirement "uniquely" burdened them. Lastly, the City rejects owners' argument that moving the arcade away from the concert hall's front entrance adequately protects the historic district's public policy concerns because, regardless, the arcade would establish an existing, nonconforming use that would likely be perpetuated by future tenants.

## STANDING

Our Supreme Court has consistently held that, in order to have standing to challenge the validity of governmental action, one must generally have a substantial, direct, and immediate interest in the claim sought to be litigated. A substantial interest is one in which there is "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *William Penn*, 464 Pa. at 195, 346 A.2d at 282. A "direct" interest requires a showing that the matter complained of causes harm to the party's interest. *Upper Bucks County Vocational–Technical School Education*

*Association v. Upper Bucks County Vocational–Technical School Joint Committee,* 504 Pa. 418, 474 A.2d 1120 (1984). An "immediate" interest is something more than a "remote consequence" and centers on the causal nexus and proximity between the action complained of and the injury to the party challenging it. *William Penn,* 464 Pa. at 197, 346 A.2d at 283; *Skippack Community Ambulance Association, Inc. v. Township of Skippack,* 111 Pa.Commonwealth Ct. 515, 534 A.2d 563 (1987). The requirement that the interest be "immediate" is also met where it falls within the "zone of interests sought to be protected by the statute or constitutional guarantee in question." *Upper Bucks County,* 504 Pa. at 423, 474 A.2d at 1122. Finally, the rationale underlying the requirement that the party be "aggrieved" or "adversely affected" by the action at issue is to ensure that a legal challenge is made by the appropriate party. *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979).

Applying the foregoing definitions to the case before us, we find no abuse of discretion by Common Pleas in finding that both the Trust and the Association had standing to appeal the Board's decision.

The Trust, itself an occupant of Benedum Center, has made a substantial financial investment in the Penn–Liberty historic district, in addition to its fundamental commitment of nurturing cultural activity in an area ostensibly protected from proliferation of amusement arcades by the Ordinance. During its argument before Common Pleas, the Trust submitted three additional letters (not presented to the Board) as evidence of its standing to protest the grant of the special exception and variances. This evidence, along with testimony in the record before the Board, clearly indicate that permitting owners to establish their arcade within a 200 foot range of Benedum Center, has a direct and immediate effect upon the Trust, rendering it "aggrieved" in that its "rights have been invaded or infringed." *Franklin Township v. Department of Environmental Resources,* 500 Pa. 1, 4, 452 A.2d 718, 719 (1982).

 Similarly, we find that Common Pleas did not err in finding that the Association, organized to promote "quality" commercial development and representing approximately 60 property owners and tenants in the Penn–Liberty area, had standing. In reaching this determination, we are aware that an association, even without sustaining injury itself, may nevertheless have standing to commence litigation as the representative of its members who are suffering immediate or imminent injury because of the disputed action. *Paratransit Association of Delaware Valley, Inc. v. Yerusalim,* 114 Pa.Commonwealth Ct. 279, 538 A.2d 651 (1988). Moreover, where, as here, an association claims standing to sue, it must be alleged that at least one of the association's members "has or will suffer 'a direct, immediate and substantial injury' to an interest as a result of the challenged action." *Citizens For State Hospital v. Commonwealth,* 123 Pa.Commonwealth Ct. 150, 156, 553 A.2d 496, 498–499 (1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). At the same time, this does not mean that standing requires a showing of economic injury. "[I]t is clear that some interests will suffice to confer standing even though they are neither pecuniary nor readily translatable into pecuniary terms." *William Penn,* 464 Pa. at 193, 346 A.2d at 281.

In this case, the Association offered evidence that most of its 60 dues paying members, consisting of property owners and tenants, have a substantial, direct and immediate interest in maintaining the integrity of this historic district and in encouraging upscale commercial establishments that will be adversely impacted by an amusement arcade likely to become a hangout for youngsters and adults alike. Common Pleas, therefore, correctly found that the Association, on behalf of its members, had standing to object to owners' proposed use.

 As to the standing of the City to intervene in this case, we concur with Common Pleas in its finding that although the City failed to intervene within the required 30-day appeal period, owners essentially waived their right to

object. Specifically, owners failed to object to the City's participation in a conciliation conference on February 20, 1990, and also filed a supplemental brief on May 1, 1990 regarding the issue of standing, in which they referred to the City as intervenor/appellant without raising any objections. The foregoing, coupled with the fact that owners allowed virtually a three-month period to elapse between the date of the City's notice to intervene, February 27, 1990, and the date when they filed their motion to quash said intervention, May 22, 1990, constitute substantial evidence supporting Common Pleas' decision to deny owners' motion to quash the City's intervention.

## SPECIAL EXCEPTION AND VARIANCES

 Turning now to the issue of whether substantial evidence supported the Board's decision granting owners the special exception and variances, or whether the Board committed an error of law, we find that the record substantiates the Common Pleas' decision to reverse the Board. In qualifying for the grant of a special exception, owners must satisfy both an "evidence presentation burden" and a "persuasion burden." *Reformed Seventh Day Adventist Church, Inc. v. Philadelphia Zoning Board of Adjustment,* 127 Pa.Commonwealth Ct. 445, 449, 561 A.2d 1324, 1326 (1989). In the present case, they have done neither.

Under the special exception requirements set forth in Section 909.06(b)(26)(A) and (B) of the Ordinance, an amusement arcade is neither permitted in an historic district, such as Penn–Liberty, nor permitted within 500 feet of a concert hall or cultural center. The record indicates that the Trust, the Association and City have met their evidentiary burden of showing that owners' proposed arcade (to be located in an historic district within 200 feet of Benedum Center) would not comply with these special exception requirements. *Appeal of Baird,* 113 Pa.Commonwealth Ct. 637, 537 A.2d 976 (1988), *petitions for allowance of appeal denied,* 521 Pa. 613, 557 A.2d 344 (1989).

Therefore, being unable to meet all special exception requirements under the Ordinance, owners also applied for variances regarding the proposed arcade use, arguing that: (1) the existence of the arcade would constitute only a *de minimis* variance, unavoidable because of the irregular placement of the Benedum Center annex relative to the subject property (which was seldom used by the public); (2) denial of the variance would subject owners to unnecessary hardship in not being allowed to use the subject property as an arcade; (2) the arcade would be within 500 feet of the Benedum Center stage door, not the more frequently used public entrance and, thus, would not be detrimental to neighborhood health, safety and welfare. The Board granted owners the variances.

After reviewing the record, however, we agree with Common Pleas in reversing the Board's action on the grounds that: (1) essentially, owners are not seeking a dimensional, but rather a use variance, in trying to establish the amusement arcade in an historic district; and, (2) the subject property is situate well within 200 feet not only of Benedum Center, but of other nonconforming amusement arcades, when the Ordinance clearly requires a distance of 500 feet, thereby creating a substantial, not a minor, dimensional deviation.

Traditionally, we have held that an applicant for a variance has the burden of proving both that unnecessary hardship will result if the variance is denied, and that the proposed use will not be contrary to the public interest. *Andreucci v. Zoning Hearing Board of Lower Milford Township*, 104 Pa.Commonwealth Ct. 223, 522 A.2d 107 (1987). The record supports Common Pleas in reversing the Board, and in finding that owners failed to prove that physical proximity of the Benedum Center annex to the subject property is so unique a problem as to render the subject property valueless if not used for an amusement arcade, or that denial of the variances prevents owners from establishing some permitted use therein. Economic and personal considerations in and of themselves are insuf-

ficient to constitute hardship. *McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa. Commonwealth Ct. 448, 545 A.2d 470 (1988).

■ Similarly, examination of the record indicates that the Board erred in accepting owners' *"de minimis"* arguments because essentially owners are seeking a use, rather than a *de minimis* variance. It is rare that a use variance can be granted on *de minimis* grounds as is evidenced by the prevailing rationale underlying zoning matters before this Court, as shown by the following:

> The doctrine has exclusively been applied in cases where only minor deviations from dimensional zoning ordinances have been the basis for the variances sought. Because the crucial fact in this case is that Rollins' sign encroaches into the 75 foot buffer zone created by Section 14–303(2)(r)(.3) by only two feet it may initially appear that this is a *dimensional* variance case to which the *de minimis* rules apply. However, the variance being sought here is more accurately characterized as a *use* variance, *i.e.*, Rollins has requested that the Board permit its sign to remain in the buffer zone where it is a non-permitted use.

> 'There is no precedent, however, for approving a *use* variance based on the *"de minimis"* approach.' *Kensington South v. Zoning Board of Adjustment of Philadelphia,* 80 Pa.Commonwealth Ct. 546, 550, 471 A.2d 1317, 1319 (1984), citing *Application of Burroughs Corp.,* 54 Pa.Commonwealth Ct. 514, 422 A.2d 1183 (1980). Further Rollins has not presented an argument to convince us that the *de minimis* doctrine is properly applied in *use* variance cases. In *Cook v. Zoning Hearing Board of Ridley Township,* 47 Pa.Commonwealth Ct. 160, 408 A.2d 1157, 1159 (1979), we stated that, "we agree with a notable authority in the field that 'it is difficult to conceive of a use variance which would be truly *"de minimis"*.' " *citing* Ryan, Pennsylvania Zoning Law and Practice, Section 6.3.1 (Supp.1979).

*Rollins Outdoor Advertising, Inc. v. Zoning Board of Adjustment,* 108 Pa.Commonwealth Ct. 277, 284–85, 529 A.2d 99, 103 (1987) (emphasis in original).

Moreover, even if owners were not requesting a use variance and *de minimis* variance standards applied, a distance of 200 feet between the subject property and Benedum Center when the Ordinance unequivocally requires a distance of 500 feet is too significant a deviation to be *de minimis.* In *Heilman v. Zoning Board of Adjustment of Philadelphia County,* 69 Pa.Commonwealth Ct. 157, 450 A.2d 318 (1982), this Court held that, given an eight-foot setback requirement, a five-foot setback was not a *de minimis* deviation relieving owner from meeting the standard criteria for obtaining a variance. Further, in the present case, although owners argue that the Benedum Center annex houses only a non-public stage door, there is evidence in the record that it is still heavily trafficked and used by the public (e.g., caterers) in supplying services to the cultural center.

Accordingly, based on the foregoing discussion, we affirm the order of Common Pleas.

PELLEGRINI, J., did not participate in this decision.

PALLADINO, J., dissents.

### ORDER

AND NOW, this 14th day of February, 1992, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.