The **BOROUGH OF MILTON**, Appellant,

v.

Mark **DENSBERGER** and Zoning Hearing Board of the Borough of Milton.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Oct. 21, 1998.

Robert E. Benion, Milton, for appellant.

Michael Dennehy, Danville, for appellees.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

The Borough of Milton (Borough) appeals from an order of the Court of Common Pleas of Northumberland County, reversing an order of the Borough's Zoning Hearing Board (ZHB) which had denied the appeal of Mark Densberger from an enforcement notice issued by the Borough.

The property in question is located in the R1–MD zoning district of the Borough, an area of the Borough designated as a Floodway District, which is subject to a Floodplain Ordinance (Ordinance). Section 5.1(D)(3)(b) of the Ordinance provides as follows:

> The following shall not be placed or caused to be placed in the designated Floodway: fences, **except two-wire fences**, other matter which may impede, retard or change the direction of the flow of water, or which will catch or collect debris carried by such water, or be placed where the natural flow of the stream or flood waters would carry the same downstream to the damage or detriment of either public or private property adjacent to the floodplain;

(Floodplain Ordinance of the Borough of Milton, § 5.1(D)(3)(b).) (Emphasis added.) In addition, the Borough requires any resident who desires to build on any property, or make substantial improvements to existing property, located in the Floodway District to obtain a permit, so that the Borough may make a preliminary assessment of whether the contemplated construction will be sufficiently resistant free in the event of a flood.

In the summer of 1994, Densberger removed a four-foot high steel mesh fence from his property and replaced it with a six-foot high wooden fence. Densberger did not obtain the required permit before doing so. By a decision and order dated August 3, 1995,[1] the Borough's ZHB concluded that the wooden fence violated the Ordinance, denied Densberger's application for a variance from the requirements of the Ordinance and ordered him to remove the wooden fence. No appeal was taken from the ZHB's order, and, in the fall of 1995, Densberger removed the fence.

In November of 1995, however, Densberger erected a chain-link fence on the west and south sides of his property. As with the previous fence, Densberger did not obtain a permit before doing so. On December 28, 1995, the Borough, through the Borough Manager, sent an enforcement notice to Densberger advising him that the chain-link

---

1. The record does not disclose how the matter came before the ZHB, *i.e.,* whether it resulted from an enforcement notice or an application for a variance by Densberger.

fence violated Section 5.1(D)(3)(b) of the Ordinance, indicating that he had until January 30, 1996, to comply with the Ordinance by removing the fence. The notice also advised Densberger of his right to appeal to the ZHB, which he did on January 29, 1996, and a hearing was scheduled before the ZHB on May 15, 1996.

During the hearing, the Borough presented the testimony of Joyce Stahl, the Borough's Zoning Officer. She testified concerning the previous fences that had been on Densberger's property, as well as the current chain-link fence. Ms. Stahl opined that, although the Ordinance did not define the term "two-wire fence," she understood the term to denote two wires running parallel to each other and attached to vertical posts at various intervals. Ms. Stahl further elaborated by stating that a two-wire fence is the type that might be used to keep farm animals confined in a pasture. Ms. Stahl concluded that Densberger's fence was not a two-wire fence. On cross-examination, Ms. Stahl conceded that Densberger's fence could be made of wire, although she had not actually touched it, and she also conceded that vertical posts did support the wires at various intervals, despite the fact that the wires crisscrossed instead of running parallel to one another. In addition to Ms. Stahl's testimony, the Borough also admitted several pictures of the current fence.

In response, Densberger testified in support of his appeal. Specifically, Densberger testified that he believed that the chain-link fence was necessary on his property because he has a pool and a dog and, therefore, needs the type of fence that will keep his dog inside his yard and keep neighboring children from having access to his pool. In addition, Densberger opined that he believed that the chainlink fence constituted a two-wire fence because it consisted of poles connected by strands of wire, despite the fact that there were multiple wires and that the wires crisscrossed, rather than running parallel. Finally, Densberger noted that, during a flood

in early 1996, the chain link fence did not impede water or cause any debris to collect near his property. Densberger offered a video corroborating this statement.

By a decision and order dated June 27, 1996, the ZHB denied Densberger's appeal from the enforcement notice and found that the chain-link fence violated the Ordinance. In doing so, the ZHB adopted Ms. Stahl's interpretation of the term "two-wire fence." Densberger appealed from that order to the Court of Common Pleas of Northumberland County.

On appeal, Common Pleas, taking no additional evidence, sustained Densberger's appeal and dismissed the Borough's enforcement action against him. In doing so, Common Pleas concluded that the term "two-wire fence" was vague and ambiguous and noted that it could not discern the meaning of the term "two-wire fence." Accordingly, Common Pleas looked to the intent of the Ordinance to determine whether the chain-link fence complied with the Ordinance. Common Pleas concluded that the intent of the Ordinance was to prohibit any type of fence which would impede the flow of water during flood conditions or otherwise aggravate flood conditions by permitting debris to collect by the fence. Common Pleas determined that, although Densberger's previous fence did not comply with the Ordinance, the present chain-link fence did comply with the Ordinance. This appeal by the Borough ensued.

■■■ On appeal to this Court,[2] the Borough argues: (1) Common Pleas erred in concluding that the term "two-wire fence," as it is used in the Ordinance, is vague and ambiguous; and (2) Common Pleas erred by concluding that the chain-link fence did not contravene the purpose of Section 5.1(D)(3)(b) of the Ordinance.

■■■ It is, of course, well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great

---

2. Where, as in the instant matter, the Common Pleas has taken no additional evidence, our standard of review is limited to determining whether the Board abused its discretion, committed an error of law or made findings of fact not sup-

ported by substantial evidence. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment*, 145 Pa.Cmwlth. 503, 604 A.2d 298 (1992), *petition for allowance of appeal denied*, 538 Pa. 618, 645 A.2d 1320 (1994).

weight and deference from a reviewing court. *See Johnston v. Upper Macungie Township*, 162 Pa.Cmwlth. 170, 638 A.2d 408 (1994). This principle is also codified in Section 1921(c)(8) of the Statutory Construction Act of 1972.[3] The basis for the judicial deference is the knowledge and expertise that a ZHB possesses to interpret the ordinance that it is charged with administering. *Willits Woods Associates v. Zoning Board of Adjustment of Philadelphia*, 138 Pa.Cmwlth. 62, 587 A.2d 827 (1991). In the present case, the ZHB, relying on the testimony of Ms. Stahl, concluded that

> a two-wire fence as is designated in the Floodplain Ordinance of the Borough of Milton, consists of two single strands of wire connected between two posts or other supports.

(Conclusion of Law No. 4; Reproduced Record (R.R.) at 91a.) Ms. Stahl's testimony was certainly substantial competent evidence to support the ZHB's interpretation of its own ordinance, and we fail to see the ambiguity in the term "two-wire fence," in light of the plain meaning of the word, as well as the testimony elicited before the Board. Quite simply, "two wires" means exactly that—two wires. In addition, we find no error of law or abuse of discretion on the part of the ZHB, particularly in light of the deference afforded to such bodies when interpreting their own ordinance. *Willits Woods Associates.* Accordingly, Common Pleas erred when it concluded that the term "two-wire fence" was vague or ambiguous. Therefore, our review focuses on the ZHB's determination that Densberger's fence violated the Ordinance.

■ The ZHB determined that Densberger's fence was not a two-wire fence because it had numerous strands of wire crisscrossing, rather than two strands running parallel to one another. In support of Common Pleas' opinion, however, Densberger argues that his fence complies with the Ordinance because it is made of wire and does not impede the flow of water. As support for this argument, Densberger focuses on the language of the Ordinance immediately *after* the prohibition of fences other than two-wire fences. That phrase of the section governs

> **other matter** which may impede, retard or change the direction of the flow of water . . .

(Floodplain Ordinance of the Borough of Milton, § 5.1(D)(3)(b).) (Emphasis added.) Clearly, then, the requirement that a structure not impede or change the direction of water applies to things other than fences, as fences are specifically mentioned in the phrase immediately proceeding the one on which Densberger relies. Therefore, it is clear that, for purposes of the Ordinance, a fence complies with or violates the Ordinance based upon its classification as a two-wire fence, not on its ability or inability to change the flow of water. Densberger does not assert that the structure at issue is anything other than a fence; indeed, he stated numerous times before the ZHB that the structure was a fence.

■ Densberger further argues that a two-wire fence, as the Borough interprets that term, will not keep neighboring children away from his pool and will not keep his dog from leaving his yard. Therefore, Densberger asserts that, if he must use only a two-wire fence, he will not only be exposed to potential liability from children wandering into his pool, but also he may violate the Borough's prohibition against allowing a dog to wander unattended. This argument, however, ignores the fact that the Ordinance is not designed to address such concerns; rather it is solely designed to prevent the creation or aggravation of flood conditions. No argument was presented that a fence had been erected prior to the adoption of the Ordinance so that it would qualify as a preexisting nonconforming use, nor that Densberger relied upon any permit approval or other affirmative action on the part of the Borough to qualify a fence to surround his pool upon a vested rights theory. Moreover,

---

3. 1 Pa.C.S. § 1921(c)(8). That section provides as follows:

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> . . . .

> 8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c)(8). The rules of statutory construction are applicable to both statutes and ordinances. *See Heck v. Zoning Hearing Board for Harvey's Lake*, 39 Pa.Cmwlth. 570, 397 A.2d 15 (1979).

we may take judicial notice of the many "invisible fences" on neighborhood property that restrain animals, dogs in particular, even when they run free. Accordingly, as the ZHB correctly noted, "the issue solely before [the ZHB] is whether the fence in question violates the provisions of the [Ordinance], and [the fence's] necessity or lack thereof is irrelevant in making that determination." (ZHB Decision at 6; R.R. at 92a.) Therefore, like the ZHB, we reject this argument.

In sum, we conclude that the ZHB did not abuse its discretion or commit an error of law in its interpretation of the Ordinance or its conclusion that Densberger's fence violated the Ordinance, and we are satisfied that the necessary findings of the Board were supported by substantial evidence, *i.e.*, the testimony of Ms. Stahl, as well as the exhibits submitted by the Borough at the hearing.

Order reversed.

### ORDER

**NOW,** October 21, 1998, the order of the Court of Common Pleas of Northumberland County in the above-captioned matter is hereby reversed.