# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Pascal and Chris Gates, :
                            Appellants :
                                  :
             v.                  :    No. 322 C.D. 2020
                                  :    Argued:  October 13, 2020
City of Pittsburgh Zoning Board of :
Adjustment, Gina Grone and Corey :
Grone and City of Pittsburgh :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE ELLEN CEISLER,** Judge
                  **HONORABLE J. ANDREW CROMPTON,** Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: November 24, 2020**

Stephen Pascal and Chris Gates (Objectors) appeal from the February 5, 2020 Order of the Court of Common Pleas of Allegheny County (common pleas) that denied Objectors' appeal and affirmed the Decision of the City of Pittsburgh Zoning Board of Adjustment (Board) that granted variances from setback and height requirements to Gina Grone and Corey Grone (the Grones) relating to an existing fence and gate around an area in which the Grones have an easement interest. On appeal, Objectors argue the variances should not have been granted because the Grones do not own the subject property and the Grones failed to prove the requirements for obtaining the requested variances.[1]  The Grones argue that

---

[1] Objectors also argued that the Board's Decision was not timely issued, thereby resulting in a deemed denial of the Grones' requested zoning relief.  However, Objectors have withdrawn that argument due to the Grones giving the Board an extension to issue its decision.  (Objectors' Answer to Application to Quash ¶ 11.)

Objectors lacked standing to appeal the Board's Decision because there was no evidence that they were aggrieved by the grant of the variances and that the Grones met their burden of proving an entitlement to the variances.[2]  Because the record contains no evidence that Objectors are aggrieved, we affirm on that basis.

## I.      Factual Background

### A. *The Zoning Application*

The Grones own the property at 916 James Street (Grone Property), which is zoned R1A-VH (Residential Single-Unit Attached, Very High Density) and located in Pittsburgh's East Allegheny neighborhood.  The Grone Property sits between row houses at 918 and 914 James Street and is separated from the corner of Thropp Way by 914 James Street.  The rear of the Grone "Property is adjacent to a 6' by 52.12' strip of land that extends along the side property line of [a] parcel . . . at 507 to 509 Tripoli Street ('Easement Area')."  (Board Decision, Finding of Fact (FOF) ¶ 2.) This "Easement Area extends along the rear of the [Grone] Property and the rear of the adjacent property at 914 James Street to Thropp Way." (*Id.*)  There is a recorded easement providing that "[t]he Easement Area . . . benefits both of these parcels and provides access from the rear of th[ose] parcels to Thropp Way." (*Id.*)  Currently "located on the Thropp Way end of the Easement Area, on the property line," is "[a] 7' wooden gate and fence" "with a 0' setback." (*Id.* ¶ 3.)  Per the Zoning Code of the City of Pittsburgh, Pennsylvania (Code), there is a five-foot exterior setback requirement and a maximum height restriction of either four feet or six and one-half feet on fences located in setback areas, depending on the type of fence.  Sections

---

[2] The City of Pittsburgh and the Board are precluded from participating due to their not filing briefs.

903.03.E.2, 925.06.A of the Code.[3]  The Grones filed an application with the Board seeking variances from these requirements for the existing fence and gate at the Thropp Way end of the Easement Area.

## B. *Proceedings Before the Board*

The Board held a hearing on April 18, 2019, at which Mr. Grone testified and presented documentary evidence, and Mr. Gates appeared to object.  All appeared without counsel.  Mr. Grone testified in support of the variances as follows.  The configuration of the parcels is "a little strange," with 918 James Street being an L-shaped lot with the Easement Area running behind the Grone Property.  (Original Record (O.R.), Board Hearing (Hr'g) Transcript (Tr.) at 4; Supplemental Reproduced Record (S.R.R.) at 71a.[4])  The Grones do not own the Easement Area; it belongs to the owner of 918 James Street, but the Grones "have an easement in perpetuity." (Hr'g Tr. at 4.)  The Easement Area supports only the Grones' use, and the owners of 914 James Street and 918 James Street do not have access to it.  (S.R.R. at 71a.)  The fence is "installed on Thropp [Way]," which is "like an alley" with little traffic.  (*Id.* at 71a-72a.)  The purpose of the existing seven-foot-high gate and fence, which have an opening or break in the wood at about six feet high, is to provide privacy and to limit access to the rear of the Grone Property.  (*Id.* at 72a.)

---

[3] The relevant Code provisions are found in the Reproduced Record.  The Board's Decision cites to Section 925.06.A of the Code for the fence height restriction, but, as will be discussed *infra*, that section has two different height restrictions.

[4] The copy of the Board hearing transcript contained in both the Reproduced Record and Supplemental Reproduced Record are missing page 3 and part of page 4 of the hearing transcript.  Also, the Reproduced Record is not paginated, and the Supplemental Reproduced Record has page numbers beginning at "42a" but uses "a" rather than "b," as required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173.  Nevertheless, for ease of our review, we will cite, where we can, the Supplemental Reproduced Record using the numbers as written therein.

There is at least one commercial structure in the immediate area of the Grone Property. (*Id.*)

The Grones introduced a copy of a recorded "Easement and Right of Way Agreement," executed on May 25, 2012, granting the Grones "an easement and right of way . . . to use the portion of land described in the attached legal description and survey . . . to access the deck owned by [the Grones]" for ingress, egress, and regress. (O.R., Ex. A-2.) The Grones also presented pictures of the existing fence that spans the width of the six-foot-wide Easement Area, with two pieces of fencing attached to brick structures on either side of the Easement Area divided by a gate, and photographs of neighboring properties to show the condition of those properties, as well as real estate maps depicting the structures in the vicinity of these properties. (*Id.*, Exs. A-1, A-3.) The Grones presented letters of support from the owners of 914 James Street, 918 James Street, and 507 Tripoli Street, which state "[t]he gate provides security and privacy for all interested parties and [they] appreciate it being there." (Letter from Uncle Rays Real Estate to Zoning Administrative Staff, March 7, 2019, O.R., Ex. A-4; Letter from Shawn McGrady to Zoning Administrative Staff, March 17, 2019, O.R., Ex. A-4; Letter from Warren E. Jones to Zoning Administrative Staff, March 7, 2019, O.R., Ex. A-4.)

Mr. Gates, who lives at 728 Cedar Avenue, which is about two blocks away from the Grone Property, questioned why the notice for the variance request was posted on 916 James Street, not 918 James Street where the Easement Area is located, and whether the Grones could apply for the variance because they were not the owners of 918 James Street. (S.R.R. at 73a.) The Board's Chairwoman responded that the Grones had an easement, which was an ownership interest, and it did not always have to be a property's owner that files the zoning application. (*Id.*)

4

She then asked Mr. Gates to describe his "particular concern . . . [with] the fence." (*Id.* at 74a.) Mr. Gates indicated that his "concern [was whether] . . . any of the properties[,] other than 916 or 918, . . . that back onto this 6[-]foot passageway . . . have easements to access this land . . . " and whether these other owners had been contacted to see if the fence blocked their access to the Easement Area. (*Id.*) The Chairwoman indicated no one else was there to raise a concern as to the fence's location. Mr. Gates stated he had been "called by one of the owners of a property along that strip," "Cathy," who "said she couldn't make it . . . [and] asked [him] . . . [to] find out whether she had an easement right on it." (*Id.* at 74a-75a.) The Chairwoman explained that "[a]n easement right is not what [they were] there to consider," that easement rights are not litigated before the Board, and that "[i]f the argument is that this is impinging on her easement, that's not something we are concerned about." (*Id.* at 74a.) The Chairwoman again asked Mr. Gates what his concern was about the proposed "7[-]foot[-]high fence on the exterior side with a 0[-]foot setback," to which Mr. Gates responded "[m]y concern is that [Cathy] may be losing her egress" and "that the fence is blocking other people's egress." (*Id.* at 74a-75a.) According to the Chairwoman, this was "not something [the Board] can adjudicate," and Mr. Gates responded "[t]hat's fine" but then continued to ask questions about the fence's potential effect on other easements. (*Id.* at 75a.) Following the discussion regarding potential easement rights and the Board's inability to adjudicate those rights, the Board closed the record. Mr. Pascal, who is also an owner of 728 Cedar Avenue, did not appear or otherwise object to the Grones' zoning application before the Board.

Thereafter, the Board issued its Decision granting the Grones relief. It made findings of fact, as described above, about the location and configuration of the

Grone Property and the other properties involved. It also made the following findings. Mr. Grone "stated that the fence is necessary to secure the Easement Area, and the properties that are subject to and benefit from the easement, from trespass and vandalism. The height of the fence allows for reasonable security for the Easement Area." (FOF ¶ 5.) "Several vacant and abandoned properties" and "[a] number of structures that do not comply with the Code's setback dimensional requirements" "are located in the immediate vicinity of the [Grone] Property." (*Id.* ¶¶ 6-7.) With regard to Mr. Gates, the Board found:

> [Mr.] Gates, owner of the property at 728 Cedar Avenue, which is approximately 2 blocks from the [Grone] Property, appeared at the hearing to oppose [the Grones'] request, citing concerns related to the posted notice and the nature of the easement. **Mr. Gates did not present any evidence as to how he or his property would be affected, much less aggrieved, by allowing the existing fence to remain in place, at the existing height.** The Board did not find Mr. Gates' testimony to be relevant or credible.

(*Id.* ¶ 8 (emphasis added).)

The Board indicated the issue before it was the Grones' application for variances from the Code's five-foot setback and six and one-half-foot height restriction requirements for the fence and gate. The Board set forth the general requirements it must consider in reviewing variance requests, set forth in Section 922.09.E of the Code and by the Pennsylvania Supreme Court, specifically, that unique circumstances or conditions of the property would result in unnecessary hardship on the property if the variance was denied, there would be no adverse effect on the public welfare, and the proposed variance would be the minimum variance needed to afford relief with the least possible modification of the zoning regulations. (Board Decision, Conclusion of Law (COL) ¶ 2.) It also stated that a less restrictive standard of review, as set forth in *Hertzberg v. Zoning Board of Adjustment of the*

6

*City of Pittsburgh*, 721 A.2d 43, 47-48 (Pa. 1998), is appropriate for reviewing dimensional variances, which are "only for a reasonable adjustment of the zoning regulations to accommodate a use of property that is permitted." (COL ¶ 3.) Relying on these standards, the Board concluded that "the gate is necessary to secure the Easement Area and has been in place, at the existing 7' height for a number of years." (*Id.* ¶ 4.) Notwithstanding its earlier reference to the height restriction being six and one-half feet, the Board reasoned that a "4' fence would be permitted within the . . . setback but would not achieve the necessary security for the area." (*Id.*) It further held that, "in the context of the surrounding neighborhood, the gate does not create any detrimental impacts." (*Id.*) Thus, "[c]onsistent with the evidence and testimony presented and the applicable legal standards governing variances, the Board conclude[d] that approval . . . [was] appropriate." (*Id.* ¶ 5; Board Decision at 3.)

### C. Proceedings Before Common Pleas

Mr. Gates, now joined by Mr. Pascal, appealed the Board's Decision, which "grant[ed] all of the relief requested by [the Grones]," to common pleas, asserting that they "enjoy[] standing as 'persons aggrieved' and [Mr.] Gates participated in the hearing before the [Board]." (O.R., Objectors' Land Use Appeal ¶¶ 21-22.) On the merits, Objectors asserted the Board erred in granting the variances because the Grones were not the proper party to seek the requested relief, as they did not own the Easement Area. Objectors also argued the Grones failed to establish any unnecessary hardship would occur if the variances were denied, and, therefore, the Grones could not even meet the relaxed *Hertzberg* standard. In their brief in support of that appeal, Objectors added that the Grones failed to meet any of the requirements for receiving the variances. (S.R.R. at 53a-67a.) The Grones responded they were a proper party due to their owning an easement interest in the Easement Area, which

7

is where the fence and gate were located, and that the fee simple owner of 918 James Street supported the variances via letter directed to the Board. (O.R., The Grones' Brief (Br.) in Opposition to Land Use Appeal at 4-5.) They further argued that they met the relaxed standard for obtaining dimensional variances under *Hertzberg*, citing, among other reasons, the need to secure the Easement Area and the characteristics of the neighborhood, which was highly dense with many structures built to the edge of the property. (*Id.* at 5-6.) The Grones also contended that the Board correctly found Mr. Gates did not establish standing as an aggrieved party as he did not present any evidence that he or his property would be affected or aggrieved; rather, Mr. Gates attended the Board hearing to represent another individual on the easement issue. (*Id.* at 6-7.) Therefore, the Grones asserted Objectors' appeal should be quashed.

After oral argument and without taking additional evidence, common pleas denied Objectors' appeal and affirmed the Board's Decision. Common pleas held the Board did not err in granting the variances because the Board's findings "that the fence is necessary to secure the [E]asement [A]rea . . . and does not cause any detrimental impacts to the surrounding neighborhood" was supported by the record. (Common pleas opinion (Op.) at 3.) Common pleas also concluded that the Board's finding that "neither [Mr. Gates] nor his property is aggrieved or affected by the existence of fence" was supported by the record. (*Id.*) Common pleas further explained that the Board gave Mr. Gates' evidence no weight and rejected his testimony as not credible. Common pleas did not individually address Mr. Pascal's, the other Objector, standing, but did state that Mr. Pascal owned property located

approximately two blocks away with Mr. Gates. (*Id.* at 2.) Objectors now appeal to this Court.[5]

## II. Discussion

Because it involves a threshold issue, we begin with the Grones' arguments, raised in both their appellate brief and in an Application to Quash Appellants' Brief (Application), that Objectors lacked standing to appeal the Board's Decision as there was no evidence of their being aggrieved by the granting of the variances. The Grones assert, as they did before common pleas, that Objectors did not have standing to object to the zoning relief granted by the Board based on the Board's finding of lack of aggrievement, which common pleas held was supported by substantial evidence. The Grones maintain the record supports these determinations because Mr. "Gates did not present <u>any</u> evidence as to how he or his property would be affected, much less aggrieved," by the granting of the variances. (The Grones' Br. at 9.) Rather, they argue, Mr. Gates appeared before the Board "to represent the issues of . . . 'Cathy' who, [Mr.] Gates asserted, might or might not be entitled to use the [E]asement [A]rea." (*Id.* at 8.) The Grones also assert that Objectors waived any challenge to these findings because they did not address the issue of their standing in their appellate brief and, therefore, Objectors' brief and appeal should be quashed. (Application to Quash Brief (Appl.) ¶ 10.)

Objectors filed an Answer to the Application, instead of filing a reply brief, responding that common pleas "did not expressly conclude that [Objectors] did not

---

[5] "Our scope of review where [common pleas] took no additional evidence is limited to determining whether the Board committed an error of law or abused its discretion. A zoning hearing board abuses its discretion only if its findings are not supported by substantial evidence." *Thomason v. Zoning Hearing Bd. of Twp. of Radnor*, 26 A.3d 562, 565 n.5 (Pa. Cmwlth. 2011) (citations omitted).

9

have standing to appeal the [Board]'s [D]ecision." (Objectors' Answer to the Appl. ¶ 8.) Rather, common pleas held that the Board's findings that Mr. Gates was not credible and "that neither he nor his property is aggrieved or affected by the existence of the fence" were supported by the record. (*Id.* (quoting common pleas Op. at 3).) Objectors argue that while the term "aggrieved" "is often associated with standing in Pennsylvania case law, neither [common pleas'] Opinion nor its corresponding Order equate[d] the use of the term 'aggrieved' with a lack of standing or makes mention of whether [Objectors] are 'aggrieved persons' for purposes of determining standing." (*Id.* ¶ 9 (citing *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1149 (Pa. 2009)).) Therefore, Objectors assert the Grones "wrongfully assume[] that the use of the term 'aggrieved' in [common pleas'] Opinion necessarily mean[t] that [Objectors] lack standing to appeal the [Board]'s [D]ecision." (*Id.*) Objectors further point out that common pleas affirmed only the Board's conclusion that Mr. Gates was not aggrieved and did not address Mr. Pascal. (*Id.* ¶ 10.)

"A challenge to a party's standing raises a question of law subject to this Court's plenary, de novo review." *O'Neill v. Phila. Zoning Bd. of Adjustment*, 169 A.3d 1241, 1244 (Pa. Cmwlth. 2017). The term "aggrieved" in the zoning context is used to reference whether a party has standing to appeal a zoning decision. *Spahn*, 977 A.2d at 1149; *Pittsburgh Tr. for Cultural Res. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 604 A.2d 298, 301-02 (Pa. Cmwlth. 1992). Section 752 of the Local Agency Law, 2 Pa.C.S. § 752, which applies to appeals from a Board adjudication, provides that "[a]ny person **aggrieved** by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom . . . ." (Emphasis added.)

10

That "aggrieved" has a particular meaning in the **zoning** context is reflected in Section 1002.1-A(c) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 11002.1-A(c)[6] (emphasis added), which although not applicable in the City, states that "[a]ppeals under this section shall **only** be permitted by an **aggrieved person** who can establish that reliance on . . . the challenged decision resulted or could result in a use of property that **directly affects such person's substantive property rights**." Consistent with the Local Agency Law and the MPC, Section 923.02.H of the Code requires aggrievement to appeal, stating "[a]ny party **aggrieved** by a decision of the . . . Board . . . may, within thirty (30) days, appeal the decision to . . . [c]ommon [p]leas . . . ." Code, § 923.02.H (emphasis added). The "aggrieved party standing" standard for appealing local agency adjudications "requires: (1) the party aggrieved to have a direct interest in such adjudication, and that such interest be substantial; and (2) a showing of harm to that direct substantial interest" by the local agency's decision. *Pittsburgh Tr. for Cultural Res.*, 604 A.2d at 301-02 (internal quotation marks and citation omitted). "A substantial interest is one in which there is **some discernible adverse effect to some interest other than the abstract interest of all citizens** in having to comply with the law." *Id.* at 303 (internal quotation marks and citation omitted, emphasis added). To be a direct interest, the party must show "that the matter complained of **cause[d] harm to the party's interest**." *Id.* (emphasis added). While the proximity between a party's property interest and the property at issue **may** be sufficient to establish an adverse impact, *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Hearing Board of Adjustment of the City of Philadelphia*, 951 A.2d 398, 404 (Pa. Cmwlth. 2008), owning property within a "long" one and a half blocks to three blocks is insufficient

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 5 of the Act of July 4, 2008, P.L. 319, 53 P.S. § 11002.1-A(c).

11

to provide standing where there is no assertion of particular harm, *Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 397 n.6, 398 (Pa. Cmwlth. 2015).

In order for Objectors to have standing to have appealed the Board's Decision, they had to be **aggrieved** by the Board's Decision, meaning that the variances granted directly affected **their substantive property rights**. The Board, although not using the term "standing," found that Mr. Gates had not established "how he or his property would be affected, much less **aggrieved**" (FOF ¶ 8 (emphasis added)), by granting the variance. Further, the record shows that Mr. Gates did not represent his own interests or assert an effect on his property at the Board hearing, but asserted the interests of "Cathy," alleging she thought she might have an easement interest in the Easement Area. (S.R.R. at 75a.) As the Board could not adjudicate easement rights, the Board correctly found that Mr. Gates' testimony was not relevant to the variance request. (FOF ¶ 8.)

The Board's findings are supported by the record, as common pleas held, and the result of finding Mr. Gates and his property **were not aggrieved**, was effectively that Mr. Gates did not have standing to appeal its decision. Although Mr. Pascal did not appear at the Board proceedings, common pleas' Opinion identifies Mr. Pascal as co-owner of 728 Cedar Avenue, with Mr. Gates; thus, there is no evidence that his interest is other than the same as Mr. Gates' property interest. The Board specifically found that **the property owned by Objectors was not affected or aggrieved** by granting the variances, thereby precluding the use of that property interest as a basis to assert standing to appeal. Further, we note that Objectors refer to their property as being located approximately two blocks away. However, they did not argue that this fact gives them standing. Mr. Gates did not testify in any

12

detail about the actual proximity of Objectors' property, beyond stating that Cedar Avenue was "a block and a half south and a block west of this [P]roperty," (S.R.R. at 73a), or about any effect on him or his property at the Board hearing. At oral argument, Objectors' counsel acknowledged that Objectors could not see the fence from their property. In *Armstead*, we held that the objectors there, who resided one and a half to three blocks away from the property at issue and some of whom would be able to see the approved billboard, lacked standing because they did not live "in the immediate vicinity of the [property]" and were not particularly harmed by the relief granted despite being able to see the billboard. 115 A.3d at 397-98. Counsel also asserted at argument that Objectors were concerned that the Code was not being followed and that egress from other properties could be hindered by the fence. The first concern is the "abstract interest of all citizens in having others comply with the law," which does not confer standing to appeal. *Pittsburgh Tr. for Cultural Res.*, 604 A.2d at 303. The second concern is that of "other properties" and does not affect **Objectors' property's** egress. We note that there is no dispute that a fence could be built as of right if it complied with the height and setback requirements.

In summary, there is nothing in this record to support a finding that the location of Objectors' property is sufficient to confer standing, *Armstead*, 115 A.3d at 397-98, and Objectors did not establish that they will suffer a particular harm as a result of the Board's Decision.

Accordingly, we affirm common pleas' Order because there is no evidence Objectors were affected or aggrieved by the grant of the variances, and, therefore, they lacked standing to appeal the Board's Decision to common pleas, 2 Pa.C.S. § 752; Code, § 923.02.H; *Pittsburgh Tr. for Cultural Res.*, 604 A.2d at 301-02.[7]

---

[7] Because we affirm common pleas' Order based on Objectors' lack of standing, we dismiss the Application as moot.

Because we affirm common pleas Order on this basis, we will not address Objectors'
appellate arguments challenging the Board's grant of the variances.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Pascal and Chris Gates,       :
                    Appellants     :
                                 :
              v.               :    No. 322 C.D. 2020
                                 :
City of Pittsburgh Zoning Board of    :
Adjustment, Gina Grone and Corey    :
Grone and City of Pittsburgh        :

# O R D E R

NOW, November 24, 2020, the Order of the Court of Common Pleas of Allegheny County entered in the above-captioned matter, is **AFFIRMED**, and the Application to Quash Appellants' Brief is **DISMISSED AS MOOT**.

_____
**RENÉE COHN JUBELIRER,** Judge