SOCIETY CREATED TO REDUCE URBAN BLIGHT (SCRUB), Mary Tracy, Wecaccoe CDC, Whitman Council, Fred Druding and Jovida Hill, Appellants

v.

ZONING HEARING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA, City of Philadelphia, BDB Company and Keystone Outdoor Advertising.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 10, 2008.

Decided April 9, 2008.

Publication Ordered June 25, 2008.

Samuel C. Stretton, West Chester, for appellants.

Vincent B. Mancini, Media and Stephen G. Pollock, Philadelphia, for appellees, BDB Company and Keystone Outdoor Advertising.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Society Created to Reduce Urban Blight (SCRUB), Mary Tracy, Wecaccoe CDC,[1] Whitman Council, Fred Druding and Jovida Hill (collectively, Appellants) appeal from the August 8, 2007, order of the Court of Common Pleas of Philadelphia County (trial court). That order quashed Appellants' appeal from the decision of the Zoning Board of Adjustment of the City of Philadelphia (ZBA) granting variances to BDB Company and Keystone Outdoor Advertising (together, Appellees) to erect an outdoor sign in Philadelphia's Food Distribution Center District (FDC) on grounds that Appellants lacked standing to challenge the ZBA's determination.

On April 14, 2005, Appellees applied to the Department of Licenses and Inspection (L & I) for a zoning permit and/or use registration permit, seeking permission to erect a 2,400–square–foot, free-standing, double-faced, illuminated, non-accessory sign (Keystone Sign) on a vacant lot (Subject Property) located in the FDC. (ZBA's Findings of Fact, Nos. 1, 4, 9.) L & I refused the application, citing various violations of the Philadelphia Zoning Code (Code).[2] (ZBA's Findings of Fact, Nos. 3, 6.)

---

1. We note that, throughout the briefs/file, the name of this organization is spelled variously as Weccacoe and Wecaccoe.

2. The zoning permit was refused because the Keystone Sign's proposed height of seventy-four feet exceeded the maximum allowable height of sixty feet. Code, § 14–605. The use

On June 2, 2005, Keystone Outdoor Advertising Co., Inc., (Keystone), which leased the Subject Property from BDB Company (BDB), filed an appeal to the ZBA seeking a variance. The ZBA held six public hearings on the matter, during which, over the objections of counsel for Appellees,[3] Appellants entered appearances on the basis that they were taxpayers and/or interested parties. After hearing testimony from numerous witnesses and receiving documentary evidence, (ZBA's Findings of Fact, Nos. 11–32), the ZBA found that Appellees met their burden in support of a variance and, by decision dated November 30, 2006, granted the use and/or zoning variance to Appellees pursuant to section 14–1801(1)(c) of the Code.[4] (ZBA's Findings of Fact, No. 33, Conclusions of Law, No. 15.) Thereafter, Appellants appealed the ZBA's grant of a variance for the Keystone Sign to the trial court.

On May 1, 2007, Appellees filed a motion to quash Appellants' appeal, alleging, *inter alia,* that Appellants are not "aggrieved persons" and, thus, lack standing to appeal the ZBA's decision. (R.R. at A–31—A–39; S.R.R. at 11a.) In support of their motion

to quash, Appellees relied on the General Assembly's addition of section 17.1 to what is known as the First Class City Home Rule Act (Home Rule Act).[5] Section 17.1 provides as follows:

> In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, *the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board* or other board or commission created to regulate development.

53 P.S. § 13131.1 (emphasis added).

Prior to the enactment of section 17.1 of the Home Rule Act, section 14–1807(1) of the Code granted a right to appeal ZBA decisions to "[a]ny person or persons jointly or severally aggrieved by any decision of the [ZBA], *or any taxpayer. ...*" (Emphasis added.) By adding section 17.1 to the Home Rule Act, the General Assembly

---

permit was refused because: a sign is not permitted within 500 feet of any other outdoor advertising and the proposed Keystone Sign is located within 500 feet of another outdoor advertising sign, Code, § 14–1604(3); the square footage of the proposed Keystone Sign and support structure exceeded the 1,500 square foot maximum by 900 square feet, Code, § 14–1604(5)(b); no existing sign or signs encompassing equal or greater sign area are being removed to comply with these provisions, (Code, § 14–1604(10a)); and outdoor advertising signs are prohibited in the FDC, (Code, § 14–608(1)(a)). (ZBA's Findings of Fact, No. 6.)

3. Throughout the hearings before the ZBA, Appellees had standing objections, both written and oral, to Appellants' participation before the ZBA. (R.R. at A–27, S.R.R. at 33a, 40a.)

4. Pursuant to section 14–1801(1)(c) of the Code, the ZBA may, after public notice and public hearing, authorize, upon appeal, in specific cases, such variance from the terms of [Title 14 of the Code] as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Title would result in unnecessary hardship, and so that the spirit of this Title shall be observed and substantial justice done, subject to such terms and conditions as the ZBA may decide.

5. Act of April 21, 1949, P.L. 665, *as amended,* added by section 2 of the Act of November 30, 2004, P.L. 1523, 53 P.S. § 13131.1. The Home Rule Act is the enabling act for the City of Philadelphia's home rule charter.

attempted to apply the same "aggrieved" standard equally to every citizen of the Commonwealth.[6] *Spahn v. Zoning Board of Adjustment,* 922 A.2d 24 (Pa.Cmwlth. 2007). Recently in *Spahn* and *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment,* 921 A.2d 536 (Pa.Cmwlth.2007) (hereinafter, *Gillespie*), this court confirmed that section 17.1 of the Home Rule Act eliminated the Code's grant of general taxpayer standing and gave Philadelphia taxpayers standing only if they were detrimentally harmed, i.e., "aggrieved," by the ZBA decision they sought to appeal. Appellees alleged that neither the Association Appellants (SCRUB, Wecaccoe CDC and Whitman Council), nor the Individual Appellants (Mary Tracy, Fred Druding and Jovida Hill), established themselves as aggrieved parties because they could not point to any direct, immediate or substantial interest that was adversely affected by the ZBA's decision.

The trial court agreed that Appellants lacked standing under the amended statute, citing *Spahn* and *Gillespie.* Thus, by order dated August 8, 2007, the trial court granted Appellees' motion and

quashed Appellants' appeal.[7] (R.R. at A–22–A–25.) Appellants now appeal to this court from that order.[8]

Appellants argue that the trial court erred in quashing their appeal based on their lack of standing; they contend that they do have standing in the present matter, and they set forth six reasons why the trial court erred in concluding otherwise. Initially, however, we note that three of the reasons provided are premised on Appellants' claim of general taxpayer standing under section 14–1807(1) of the Code. Specifically, Appellants assert that they have standing as taxpayers because: (1) section 17.1 of the Home Rule Act did not eliminate general taxpayer standing; (2) section 14–1807(1) of the Code is not superseded by section 17.1 of the Home Rule Act; and (3) section 17.1 of the Home Rule Act is unconstitutional because it violates the single-subject rule set forth in Article III, section 3 of the Pennsylvania Constitution. Because these arguments are identical to ones that were fully addressed, and expressly rejected, in *Spahn* and/or *Gillespie,*[9] they necessarily fail. In fact, Appellants acknowledge as much and state that in raising these issues here, they seek only

6. With respect to all individuals in the Commonwealth outside Philadelphia, standing to appeal zoning hearing board decisions is governed by section 908(3) of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(3), which limits standing to persons *aggrieved* by the decision of the zoning hearing board.

7. On August 21, 2007, the trial court issued an order adopting as its opinion on appeal the footnote accompanying its August 8, 2007, order. (R.R. at A–29.)

8. A decision to grant or deny a motion to quash an appeal is a question of law within this court's scope of review. *Spahn.* Here, the ZBA did not explicitly rule on standing, but essentially left that determination to the trial court on appeal. Following the filing of

Appellees' motion to quash Appellants' appeal, the trial court issued a rule to show cause and ordered that a factual record be made on the issue of standing. (S.R.R. at 22a.) Thus, because the trial court considered evidence on the standing issue that the ZBA had not addressed, we must determine whether the trial court committed an abuse of discretion or an error of law by quashing Appellants' appeal. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of Pittsburgh,* 145 Pa.Cmwlth. 503, 604 A.2d 298 (1992), *appeal denied,* 538 Pa. 618, 645 A.2d 1320 (1994).

9. Petitions for allowance of appeal have been filed with our supreme court in both *Spahn* and *Gillespie;* however, the court has not yet decided whether to grant or deny allocatur in those cases.

to preserve them for further appellate review.[10] (Appellants' brief at 17–18, 20, 29, 39.) Accordingly, to establish standing, Appellants must show that they were aggrieved or detrimentally harmed by the ZBA's decision. *Spahn; Gillespie.*

 Traditionally, a party is "aggrieved" when he has an adverse, direct, immediate and substantial interest in a decision, as opposed to a remote and speculative interest. *Spahn; Society Hill Civic Association v. Philadelphia Board of License & Inspection Review,* 905 A.2d 579 (Pa.Cmwlth.2006), *appeal denied,* 592 Pa. 762, 923 A.2d 412 (2007); *Sparacino v. Zoning Board of Adjustment, City of Philadelphia,* 728 A.2d 445 (Pa.Cmwlth.1999). A substantial interest is one that surpasses the common interest of all citizens in procuring obedience to the law. *Society Hill Civic Association.* A direct interest requires a showing that the matter complained of has caused harm to a party's interest, and an immediate interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it. *Id.* With this standard in mind, we consider Appellants' remaining arguments.

Appellants first contend that the Association Appellants (SCRUB, Wecaccoe CDC and Whitman Council) have standing because of their longstanding purpose of promoting community development and opposing illegal signs. As support for this argument, Appellants rely on *Society Hill Civic Association* (holding that a civic organization has standing when its stated purpose is to protect the litigated interest), and *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of Pittsburgh,* 145 Pa.Cmwlth. 503, 604 A.2d 298 (1992), *appeal denied,* 538 Pa. 618, 645 A.2d 1320 (1994).

 However, neither *Society Hill Civic Association* nor *Pittsburgh Trust* stands for the proposition that a civic group must be granted standing in any zoning litigation involving the mission of that group, no matter how remote the impact. In fact, in both *Society Hill Civic Association* and *Pittsburgh Trust,* the court based its determination of standing on *specific facts demonstrating that the civic group involved would be aggrieved by the challenged decision.*[11] By comparison, here,

---

**10.** Appellees contend that Appellants have failed to preserve their right to challenge the constitutionality of section 17.1 of the Home Rule Act because the Pennsylvania Attorney General was not provided notice or an opportunity to defend the constitutionality of the state statute, as required by Pa. R.A.P. 521(a). Given our disposition here, we need not address this assertion.

**11.** For example, in *Society Hill Civic Association,* the court held that the Society Hill Civic Association (SHCA) and its members had a substantial, direct and immediate interest in preserving the historical attributes of the Society Hill section of Philadelphia and, thus, had standing to appeal from the Philadelphia Historical Commission's decision to allow a developer to replace marble cornices with fiberglass on the facades of historically designated properties in that area of the City. In

doing so, the court noted that Society Hill residents and businesses created SHCA specifically to promote the preservation and restoration of historic buildings in that discrete neighborhood. Moreover, SHCA and its members had been directly involved in the litigation by negotiating with the developer for preservation of the facades and by expressing their concerns at various public meetings.

In *Pittsburgh Trust,* this court held that the Pittsburgh Cultural Trust (Trust) and the Penn–Liberty Association (PLA) had aggrieved party standing to appeal a decision of the zoning board to grant variances and a special exception allowing owners to locate an amusement arcade in the Penn–Liberty district of Pittsburgh approximately 200 feet from the Benedum Center (a concert hall and cultural center). The court noted that the Trust was an occupant of the Benedum Cen-

Association Appellants fail to show or allege any interest beyond the common interest of all citizens in procuring obedience to the law. Expressed as a general mission statement, Association Appellants have articulated only a general purpose to keep signs out of areas where they are prohibited.[12] However, Association Appellants have not shown that they, or any of their members, have property interests in the immediate neighborhood of the proposed Keystone Sign that would be adversely affected by the ZBA's decision.

Next, relying on *Johnson v. Zoning Hearing Board of Richland Township*, 95 Pa.Cmwlth. 82, 503 A.2d 1117 (1986), and *Baker v. Zoning Hearing Board of West Goshen Township*, 27 Pa.Cmwlth. 602, 367 A.2d 819 (1976), Appellants assert that they have standing to appeal the ZBA decision merely because they all were present at and participated in one or more of the hearings before the ZBA. We disagree that the cited cases compel such a result.

In *Johnson*, the standing of the appellants was never contested nor addressed by the court; instead, that opinion only concerns the substantive issue of whether a dimensional variance should have been granted. Therefore, this case is of no benefit to Appellants here.

■ In *Baker*, the court considered whether Baker, who was allowed to participate as a party before the zoning board, had standing to appeal the zoning board's decision to the trial court. The court reasoned that because *there had been no objection to Baker's appearance as a party before the zoning board*, the court did not have to consider whether she had standing as a *person* aggrieved to appeal to that body. The court then considered whether Baker was a *party* aggrieved with standing to appeal to the trial court and held that she was. The present case is easily distinguished from *Baker* because Appellees here clearly objected to Appellants being allowed to participate as parties before the ZBA without first establishing that they were aggrieved persons. (R.R. at A–150.) In fact, the ZBA Chairman granted Appellees' counsel an ongoing objection to the standing of non-aggrieved persons participating before the ZBA. (R.R. at A–179, A–185; S.R.R. at 43a.) Further, during the course of the hearings, Counsel for Appellees created a record on the issue of standing and Appellants' aggrieved status. Under these circumstances, Appellants are not granted automatic standing to appeal to the trial court merely because the ZBA allowed them to participate at ZBA hearings; rather, Appellants still must establish that they have standing under section 17.1 of the Home Rule Act, i.e., that they were aggrieved persons who were detrimentally harmed by the ZBA's underlying decision to grant the variance here. *See Gillespie.*

Finally, Appellants argue that they have standing under the traditional notion of "aggrieved" persons either because the As-

---

ter, had made a substantial financial investment in the Penn–Liberty historic district and had a fundamental commitment to nurture cultural activity in the area. Similarly, the court found that the PLA, which had been organized to promote "quality" commercial development and represented approximately sixty owners and tenants in the Penn–Liberty area, had standing on behalf of its members who, as shown by the evidence presented, would suffer a direct, immediate and substan-

tial injury to an interest as a result of the challenged action.

12. In this regard, we note that the commitment of Association Appellants to oppose all illegal signs is drawn into question because the record indicates that both SCRUB and Whitman Council have withdrawn opposition to such signs where they were paid to do so. (S.R.R. at 76a, 87a–89a.)

sociation Appellants' boundaries cover the FDC or because members of the Association Appellants have homes in the general area.[13] We conclude that neither Individual Appellants nor Association Appellants have shown that they are aggrieved by the ZBA's decision to allow the Keystone Sign.

■ With respect to a protesting individual, the distance between the protestant's property interest and the property subject to the challenged zoning decision can be critical because proximity of the properties may be sufficient to establish a perceivable adverse impact. It is well-established that an adjoining property owner, who testifies in opposition to a zoning application before the zoning board, has sufficient interest in the adjudication to have standing to appeal the board's decision to the trial court. *Gillespie*; *Sparacino*. However, absent an assertion of a particular harm, standing has been denied to a protestant with no property interest in the immediate vicinity. *See Spahn* (holding that a protestant who resided one and a half blocks from the property subject to a zoning variance lacked standing because he did not assert any interest other than the interest common to all citizens regarding obedience to the law).

■ The record in this case establishes that the Subject Property is located on the far edge of the FDC, in a purely commercial area, and that the nearest residential area is over one mile away. Moreover, residents there have no view of the Keystone Sign because this residential area is separated from the Subject Property by over a mile of development, including the on/off ramps for the Walt Whitman Bridge, warehouses, truck terminals, other billboards and parking lots. The Keystone Sign is to be located approximately 1.2 miles from Druding's residence, 5 miles from Hill's residence, and 8 miles from where Tracy owns property, and all three individuals acknowledged that the Keystone Sign was not visible from their property. Thus, the Keystone sign is too far from where any of the three Individual Appellants live to have a direct or immediate effect on their interests.

Similarly, although Association Appellants represented that their boundaries encompassed the FDC, none of the three Association Appellants have shown that they have any direct property interest in the immediate area of the Subject Property that would suffer as a result of the ZBA's grant of a variance to Appellees. Moreover, the witnesses testifying on behalf of Association Appellants were unable to identify any members of their respective associations who live in the commercial-zoned area of the FDC, have businesses there or would otherwise be adversely affected by the ZBA decision to permit the Keystone Sign there. Compare *Pittsburgh Trust* (noting that the Trust occupied a building in the immediate area of the property that was subject to zoning relief and that most members of the Trust also were property owners or tenants in that historic area). As the trial court observed, the interests of Association Appellants appear remote and resemble a general intention to enforce Philadelphia zoning rules; in fact, the parties stress that the

---

13. Appellants note that because the FDC is purely commercial, unless one of the adjoining businesses comes forward, it is difficult to find a party with standing to protest an illegal sign in the area. However, as the trial court noted, the Subject Property is surrounded by other properties whose owners could have objected but chose not to protest the variance. The trial court also recognized that the fact that no other civic organizations are close enough to have standing is not a sufficient reason to grant standing to Association Appellants here.

proposed sign does not conform to the Code and that they oppose any signs in the area, but they do not allege any direct, immediate or substantial harm caused by the particular sign proposed by Appellees.

Because no Appellants have established that they are aggrieved or detrimentally harmed by Appellees' placement of the proposed Keystone Sign, we conclude that the trial court did not err in determining that they lack standing to maintain an appeal from the ZBA's decision in this case.

Accordingly, we affirm.

*ORDER*

AND NOW, this 9th day of April, 2008, the order of the Court of Common Pleas of Philadelphia County, dated August 8, 2007, is hereby affirmed.