Elke Plaxton                                    :
                                                :
            v.                                  :
                                                :
Zoning Board of Adjustment and                  :
1903 Spring Garden Associates, LP               :
                                                :   No. 438 C.D. 2018
Appeal of: Arthur and Elke Plaxton             :   Submitted: January 25, 2019


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                         FILED:  July 9, 2019


            Arthur Plaxton (Mr. Plaxton) and Elke Plaxton (Mrs. Plaxton) (collectively, Objectors) appeal, pro se, from the Philadelphia County Common Pleas Court's (trial court) February 22, 2018 order denying Objectors' appeal and affirming the City of Philadelphia (City) Zoning Board of Adjustment's (ZBA) April 25, 2017 decision granting 1903 Spring Garden Associates, LP (Applicant) a use variance to park four vehicles in the rear yard of its property located at 1903 Spring Garden Street, Philadelphia (Property) and a dimensional variance from the Philadelphia Zoning Code's (Code) landscaping requirements. Objectors present three issues for this Court's review: (1) whether the trial court erred by determining that Objectors lacked standing; (2) whether the trial court abused its discretion by applying the unclean hands doctrine; and (3) whether the trial court erred or abused its discretion by upholding the ZBA's decision.

            In *Plaxton v. Zoning Board of Adjustment* (Pa. Cmwlth. No. 727 C.D. 2015, filed June 13, 2016) (*Plaxton I*), this Court reversed the ZBA's ruling that rear parking on Applicant's property was permitted as of right, and granted Applicant a

variance from the Code's landscaping requirement due to Applicant's inability to use the Property. This Court remanded the matter for the ZBA to determine whether Applicant is entitled to a variance for the proposed parking and, if so, whether a variance should be granted from the Code's landscaping requirements.

On February 15 and March 22, 2017, the ZBA held remand hearings during which various witnesses testified in support of the variances. The witnesses described their concerns about the lack of parking in the neighborhood and explained that it was usual and customary for property owners to use rear yards for parking. *See* ZBA Decision at 3. Further,

> Objectors testified that they had previously obtained zoning approval to alter the rear of their property to create a rear yard and that Objectors have been using this rear yard as space in which to park their vehicle for many years. Mrs. Plaxton testified that to pull their vehicle into their rear yard, they do not have to drive over anyone else's property. However, Mrs. Plaxton claimed that, to pull out of the parking spaces Applicant seeks to use, cars have to 'trespass' over her public sidewalk ([] which Objectors are legally obligated to maintain) and into her yard before they can drive away down Monterey Street. Moreover, Mrs. Plaxton testified that the cars leave tire marks in her yard. Mr. Plaxton also testified that the traffic in and out of Applicant's proposed parking spaces has not caused the poor, cracking, and deteriorating condition of his sidewalks.

Trial Ct. Op. at 4.

On April 25, 2017, the ZBA unanimously approved Applicant's variances, allowing the Property's rear yard area to be used for four parking spaces. On May 5, 2017, Objectors appealed to the trial court. On February 22, 2018, the trial court dismissed Objectors' appeal because they lacked standing and were

2

ineligible for equitable relief based on the doctrine of unclean hands.[1]  In dismissing the appeal, the trial court determined:

> Objectors did not have standing to appeal from the [ZBA]'s decision to the [trial court] because Objectors failed to demonstrate that they were 'aggrieved' persons.  More specifically, **Objectors failed to prove that the granting of the variances would have some discernible effect on some interest of the Objectors in a way that is greater than that of any other citizens**.  The credible evidence at the hearing indicated that vehicles entering or leaving Applicant's proposed parking spaces would not trespass over Objectors' property or affect it in any way.
>
> The [ZBA] found [Applicant's agent's] testimony as credible and persuasive and accepted that cars entering or leaving Applicant's proposed parking spaces would not trespass over Objectors' property or effect it in any way.  Moreover, the [ZBA] found [Applicant's agent's] testimony consistent with the [City's] Streets Department's approval of the parking spaces.  Indeed, Objectors even stated that to move vehicles into and out of their rear yard (which they, like the Applicant, use for parking), they do not have to drive over anyone else's property.  Mr. Plaxton[] even stated that the cars entering or leaving Applicant's proposed parking spaces had not and would not have any effect on the condition of Objectors' sidewalk.
>
> Thus, the variances did not harm any interest of Objectors in any way that was greater than any other citizen.  As such, Objectors failed to demonstrate that they are 'aggrieved' persons with standing to appeal from the [ZBA]'s decision to the [trial court].

Trial Ct. Op. at 7-8 (emphasis added; citations omitted).  The trial court further reasoned:

> Objectors were ineligible for equitable relief - in other words, barred from objecting to the variances - based upon

---

[1] Because the trial court dismissed the appeal for lack of standing, it did not address the substantive questions pertaining to whether the ZBA properly granted the variances. Notwithstanding, the trial court affirmed the ZBA's decision granting the variances.

the doctrine of unclean hands.[2] Both Objectors testified that, in 1986, they had previously obtained zoning approval to demolish a garage in the rear of their property and replace it with a rear yard. Objectors indicated in their [z]oning [a]pplication that the rear yard would not be used as 'off-street parking' as their drawing did not include such a label. However, both Objectors testified that, for many years, they have used this rear yard as a parking lot in which to park their vehicle. Objectors' use of the rear yard as a parking lot is clearly contrary to and not permitted by the zoning approval they received in 1986.

Objectors cannot use the [Code] as both a sword and a shield. Objectors' use of their rear yard as space for parking their vehicle in violation of the terms of their zoning approval while at the same time objecting to and appealing from the [ZBA]'s granting of a variance allowing accessory parking in the rear of Applicant's Property is (1) bad faith conduct offending the moral sensibilities of the Judge, (2) related to the controversy at issue, (3) detrimental to the opposing party, and (4) affecting the balance of equities between the litigants.

Trial Ct. Op. at 9. Objectors appealed to this Court.[3]

Objectors first contend that the trial court erred by dismissing their appeal for lack of standing. Objectors assert that they have standing. In particular, they claim that the Property's close proximity to their property, and the record testimony alleging visual impacts, trespass onto their property, and potential damage to their building, constitutes sufficient evidence of aggrievement.

The Pennsylvania Supreme Court has explained:

Zoning in the [City] is governed by the [] Code . . . , as well as the [First Class City] Home Rule Act, [(Home Rule Act),

---

[2] "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue." *Terraciano v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000).

[3] "Where no additional evidence is taken by the trial court, our scope and standard of review is limited to determining whether the trial court and the zoning hearing board abused [their] discretion or erred as a matter of law." *Laughman v. Zoning Hearing Bd.*, 964 A.2d 19, 22 n.3 (Pa. Cmwlth. 2008).

4

Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101-13157,] rather than the [Pennsylvania Municipalities Planning Code (]MPC[)[4]].  The [] Code, unlike the MPC, provides no definition of who is a party before the [ZBA] and does not limit who may appear and participate in a zoning hearing. . . .  [A]s this Court decided in *Spahn* [*v. Zoning Board of Adjustment*, 977 A.2d 1132 (Pa. 2009)], the Home Rule Act defines who may appeal from the [ZBA] to the trial court.

Specifically, Section 17.1 of the Home Rule Act, 53 P.S. § 13131.1, [added by Section 2 of the Act of November 30, 2004, P.L. 1523,] provides standing in appeals from zoning matters in Philadelphia, as a city of the first class, to 'any aggrieved person' as follows:

> In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this [Home Rule A]ct shall have standing to appeal any decision of [the ZBA] . . . .  As used in this section, the term 'aggrieved person' does not include taxpayers of the [C]ity that are not detrimentally harmed by the decision of the [ZBA] . . . .

53 P.S. § 13131.1.

*Scott v. City of Phila., Zoning Bd. of Adjustment*, 126 A.3d 938, 948 (Pa. 2015).

> The law is well-established:
>
> In order for an appellant to have standing to appeal a determination of the ZBA, they [sic] must demonstrate that they [sic] are [sic] an 'aggrieved person.'  *Spahn*.  For a party to be 'aggrieved,' the party must 'show an interest that is substantial, direct, and immediate.'  *Id.* (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269, 280 ([Pa.] 1975)).  For an interest to qualify as 'substantial, there must be some discernible effect on some interest other than the abstract interest all citizens have in the outcome of [the] proceedings.'  *Id.* at 1151; *see also William Penn*, 346 A.2d at 280-81 (noting that 'it is not sufficient for the person claiming to be 'aggrieved' to assert

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

5

the common interest of all citizens in procuring obedience to the law'). . . . An interest is direct where the party demonstrates 'some causation of harm to his interest.' [*Spahn*, 977 A.2d at 1151]. In order for an interest to be considered 'immediate, there must be a causal connection between the action complained of and the injury to the person challenging it.' *Id.* Therefore, to meet the three requirements for an aggrieved party, the party must demonstrate that the challenged action personally harms his or her interest in a way that is greater than that of another citizen. *Id.* at 1151-52.

*Armstead v. Zoning Bd. of Adjustment of City of Phila.*, 115 A.3d 390, 396 (Pa. Cmwlth. 2015). The Court expounded:

In *Spahn*, our Supreme Court consolidated three separate appeals from this Court involving, *inter alia*, standing in zoning cases and the constitutionality of Section 17.1 of the [Home Rule Act]. *Spahn*, 977 A.2d at 1136. In the first case, appellant Spahn appealed the ZBA's granting of a dimensional variance of the [] Code's open area requirements. *Id.* In examining whether Spahn had standing to pursue the appeal, this Court considered the fact that '[he] lived approximately one and a half blocks from the subject properties' and that he 'walked by the properties every day.' *Id.* at 1138. This Court concluded that Spahn was not an aggrieved party because his 'interest was no different from 'the interest common to all citizens regarding obedience to the law.'' *Id.* (quoting *Spahn v. Zoning B*[*d.*] *of Adjustment*, 922 A.2d 24, 31 (Pa. Cmwlth. 2007)). On appeal, the Supreme Court affirmed this Court's decision, holding that because Spahn only made legal arguments against the variance and failed to establish he was 'aggrieved,' he lacked standing. *Id.* at 1152.

In the third consolidated case in *Spahn*, the Society Created to Reduce Urban Blight (hereinafter 'SCRUB'), several other organizations, and three individuals appealed the ZBA's granting of a variance to Keystone Outdoor Advertising to erect a 2,400 square foot billboard. *Id.* at 1139-40. Prior to reaching the Supreme Court, on appeal to this Court, the individuals argued they had standing because they lived in the general area of the billboard. *Soc*[*']y Created to Reduce Urban Blight (SCRUB) v. Zoning*

6

> *Hearing B*[*d.*] *of Adjustment of City of Phila*[.], 951 A.2d 398, 403-04 (Pa. Cmwlth. 2008). **We determined that 'the distance between [a protesting individual's] property interest and the property subject to the challenged zoning decision can be critical because proximity of the properties may be sufficient to establish a perceivable adverse impact.'** *Id.* at 404. **Moreover, we concluded that 'an adjoining property owner, who testifies in opposition to a zoning application before the [ZBA], has sufficient interest in the adjudication to have standing to appeal the [ZBA's] decision to the trial court.'** *Id.* . . . On appeal, the Supreme Court reiterated our holding, concluding that because the individual [o]bjectors lived over a mile from the proposed billboard, they could not establish that they had standing as aggrieved parties. *Spahn*, 977 A.2d at 1152.

*Armstead*, 115 A.3d at 396-97 (emphasis added; footnotes omitted). Similarly, in *Laughman v. Zoning Hearing Board of Newberry Township*, 964 A.2d 19 (Pa. Cmwlth. 2009), this Court explained that "[g]enerally, in order to establish standing as an 'aggrieved person,' it must be shown that the person has a substantial, direct *and* immediate interest in the claim sought to be litigated[;]" notwithstanding, "**a property owner need not establish pecuniary or financial loss if his property is located in close proximity** to the subject property because **the zoning decision is presumed to have an effect on the property owner's property**." *Id.* at 22 (emphasis added).[5] Thus, "[t]he owner of property that is adjacent to or abuts the

---

[5] The *Laughman* Court explained:

> Obviously, property that is adjacent to or abuts the zoning area in question is in close proximity for standing purposes. We have also held that the owner of property that is within 400 to 600 feet of the challenged zoning district is also within close proximity and has standing. However, the owners of property one-half mile and one mile or more away from the challenged zoning area have been deemed to not be in close proximity in order to confer standing on those challenging a change to the zoning ordinance or map.

*Laughman*, 964 A.2d at 22-23 (citations omitted).

7

property at issue is 'aggrieved' and has standing to appeal a [zoning] board decision." *Bradley v. Zoning Hearing Bd. of Borough of New Milford*, 63 A.3d 488, 491 (Pa. Cmwlth. 2013).

In the instant matter, the trial court described Objectors' property as "a five-apartment building located at 520 North 19[th] Street **which is directly across from the rear of Applicant's Property** on the other side of Monterey Street." Trial Ct. Op. at 3 (emphasis added). As this Court described in *Plaxton I*, "Monterey Street [is] a small street identified in Applicant's site plan as approximately 6 feet, 8 inches wide[.]" *Plaxton I*, slip op. at 2. The Property's close proximity to Objectors' property, coupled with Objectors' testimony, establishes Objectors' standing as aggrieved parties. Accordingly, the trial court erred by dismissing Objectors' appeal for lack of standing.

Objectors also argue that the trial court erroneously applied the unclean hands doctrine. This Court acknowledges that "[a] court may deprive a party of **equitable relief** where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Terraciano v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237 (Pa. 2000) (emphasis added); *see also N. Chester Cty. Sportsmen's Club v. Muller*, 174 A.3d 701, 707 n.3 (Pa. Cmwlth. 2017) (citation omitted) ("Under the doctrine of unclean hands, a court may deny equitable relief where the person seeking such relief acted unfairly or with fraud or deceit with respect to the matter at issue.").

The Pennsylvania Supreme Court has emphasized:

The doctrine of unclean hands is

> far more than a mere banalty. It is a self-imposed ordinance that closes the doors of **a court of equity** to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however

8

> improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. . . . Thus while 'equity does not demand that its suitors shall have led blameless lives' . . . as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. . . .
>
> *Shapiro v. Shapiro*, . . . 204 A.2d 266, 268 ([Pa.] 1964), quoting *Precision Instrument Mfg. Co. v. Auto*[.] *Maint*[.] *Mach*[.] *Co.*, 324 U.S. 806, 814-15 . . . (1945).

*Jacobs v. Halloran*, 710 A.2d 1098, 1103 (Pa. 1998) (emphasis added).

However, "[i]t is a cornerstone principle in equity that when the legislature provides a statutory remedy, equity has no place. An action in equity cannot be used to adjudicate zoning questions. Thus, when the applicable zoning laws provide an adequate remedy, the law must be followed." *Borough of Trappe v. Longaker*, 547 A.2d 1311, 1313 (Pa. Cmwlth. 1988) (footnote and citations omitted). Here, Objectors filed a statutory appeal. Because the instant appeal is **not** an equity action, and the legislature established a statutory remedy, the equitable unclean hands doctrine cannot be used to bar Objectors from challenging the variances. Accordingly, the trial court erred by dismissing Objectors' appeal on that basis.

Having concluded that Objectors had standing to appeal from the ZBA's decision, this Court is constrained to remand the matter to the trial court to address the merits. *See Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment*, 729 A.2d 117, 122 (Pa. Cmwlth. 1999) (having determined objectors have standing, "this case is remanded to the trial court for a determination of the merits of [objectors'] appeal"); *see also Walters v. Zoning Hearing Bd. of the City of Easton*, 125 A.3d 479, 485 (Pa. Cmwlth. 2015) (having "conclude[d] that [the objector] possesses standing to appeal," the case is remanded to the trial court);

9

*Borough of Brookhaven v. Zoning Hearing Bd. of the Borough of Brookhaven*, 427 A.2d 1281, 1285 (Pa. Cmwlth. 1981) ("We will reverse the decision on the motion to quash and remand the case for consideration of the merits of the variance grant.").

For all of the above reasons, the trial court's order is reversed and the matter is remanded to the trial court.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elke Plaxton        :
           :
           :
     v.      :
           :
Zoning Board of Adjustment and  :
1903 Spring Garden Associates, LP :
           :  No. 438 C.D. 2018
Appeal of: Arthur and Elke Plaxton :

# O R D E R

AND NOW, this 9ᵗʰ day of July, 2019, the Philadelphia County Common Pleas Court's (trial court) February 22, 2018 order is reversed and the matter is remanded to the trial court for a decision on the merits.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge