# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Roseanne Adams       :
                                      : No. 141 C.D. 2019
From the Decision of The Philadelphia : Argued: June 8, 2020
Zoning Board of Adjustment (No. 26084) :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  December 21, 2020


Roseanne Adams (Adams) appeals from the December 17, 2018 order of the Court of Common Pleas of Philadelphia County (trial court) quashing Adams's appeal of the decision of the City of Philadelphia's (City) Zoning Board of Adjustment (ZBA) for lack of standing.  Upon review, we affirm.

Janice Yager (Yager) owns the vacant lot located at 1942 Hamilton Street, in the City (the Property).  Yager also owns, and lives in, the house next to the Property, at 1944 Hamilton Street.  Yager applied for permits to use the Property as non-accessory private parking with a six-foot fence and gate.  Reproduced Record (R.R.) at 115a.  The City's Department of Licenses and Inspections (L & I) refused the request, stating that the proposed use and fence height were not in compliance with the City's Zoning Code.  R.R. at 99a.  Yager appealed the refusal to the ZBA, requesting relief from Section 14-602-1 of the City's Zoning Code,[1] regarding the

---

[1] Section 14-602-1 provides the uses allowed in an RMX-3 District.  Non-accessory parking is not one of the listed permitted uses.  R.R. at 157a-58a.

permitted uses within an RMX-3 district, and Section 14-706(3)(b) of The Philadelphia Code, which imposes a four-foot height restriction on fences. *Id.* at 113a.

On February 17, 2016 the ZBA held a hearing on Yager's appeal. Yager testified that she wanted to park on the Property due to the difficulty of finding street parking and her husband's recent Parkinson's diagnosis. R.R. at 30a, 40a. Yager admitted that she could, but had not, purchased parking in a nearby garage or applied to have a handicapped spot put in front of her home. *Id.* at 40a-41a.

A representative from Yager's local Registered Community Organization (RCO), Logan Square Neighborhood Association (LSNA), and several neighbors also testified in favor of the variance. R.R. at 66a-69a. Additionally, Yager submitted a letter of non-opposition from LSNA, a petition of support signed by 32 neighbors, and letters of support from adjacent neighbors. *Id.* at 108a, 160a-62a, 163a-65a. Paula Burns, testifying on behalf of the City Planning Commission, stated that although the Commission would prefer that Yager consolidate the Property with the lot that her home sits on, the Commission understood that Yager wanted to keep the lots separate. *Id.* at 70a. Burns requested that the ZBA restrict the fence height to four feet if it grants Yager's variance request. *Id.*

Adams was the sole objector to the variance request. She testified that she and other neighbors, including Yager's husband, had participated in negotiating a neighborhood development agreement (NDA) that restricted the Property to remain a landscaped area until it was developed for single-family residential use.[2]

---

[2] R.R. at 169a-253a. The named parties to the Agreement were Rodin Parking Partners, L.P. (Developer), LSNA, Hamilton Townhouse Association, Adams, John Surman, and those owners of properties at 417, 419, 421, 425, 427, and 429 North 20th Street and 1938, 1940, and 1942 Hamilton Street (non-Developer parties are collectively known as the "Neighbor Group"). **(Footnote continued on next page…)**

R.R. at 42a. Adams further testified that there was a high demand for residential properties in the Logan Square neighborhood. *Id.* at 54a-55a. Adams conceded that she would not have challenged Yager's permit application if she had either consolidated the Property with the lot that her home sits on or placed a deed restriction on the Property. *Id.* at 56a-57a.

Adams also raised safety concerns regarding the bus stop at the corner near the Property. Adams stated that people at the stop would have their backs towards the proposed parking spaces, and a user of the parking space would have to back out onto the street. R.R. at 47a-49a. Adams testified that she does not board the bus at this stop, but rather only gets off at this stop. *Id.* Adams expressed further safety concerns regarding utility poles, parked cars, and heavy traffic in the vicinity of the proposed parking spaces. *Id.*

At the hearing's conclusion, the ZBA voted to grant Yager's request for a variance with the provisos that the fence not exceed four feet in height, parking is to be used only by the residents of 1942 Hamilton Street, and approval is for a temporary five-year term. On March 14, 2016, the ZBA issued its findings of fact and conclusions of law in support of its granting of the variance request. The ZBA found that community growth reduced the parking available and, based on her husband's Parkinson's diagnosis, proximate parking was a concern for Yager. Findings of Fact (F.F.) No. 15. The ZBA concluded that:

> 2. Under the stated provisos, the proposed fence will be limited to a maximum height of four feet – a height permitted by Code. The fence accordingly does not require a variance.

---

Under the terms of the Agreement, Developer agreed to specific restrictions and requirements for its development of certain properties in exchange for the support of the Neighbor Group.

3

6. The burden of proof in obtaining a variance is upon the landowner. *Valley View Civic Association v. Zoning Board of Adjustment*, [462 A.2d 637 (Pa. 1983)]; *Yeager v. Zoning Hearing Board*, 779 A.2d 595 (Pa. Cmwlth. 2001).

7. To establish entitlement to a variance, an applicant must show an unnecessary hardship resulting from the property's unique physical conditions or circumstances; that such hardship is not self-imposed by the applicant; that granting the variance would not adversely affect the public health, safety or welfare; and that the variance, if granted, would represent the minimum necessary to afford relief. *Alpine, Inc. v. Abington Twp. Zoning Hearing Board*, 654 A.2d 186 (Pa. Cmwlth. 1995).

8. Based upon the evidence of record, including submitted exhibits and witness testimony, the [ZBA] concludes that [Yager's] proposal meets the requirements for grant of the requested variance.

9. In so concluding, the [ZBA] notes that the Property has been vacant for decades, that the proposed use is supported by a number of near neighbors and not opposed by the LSNA, the RCO for the area, that the proposed curb cut has been approved by the Streets Department, and that the imposed provisos would limit the duration of the use and restrict the parking to the use of the adjacent property owner.

10. The [ZBA] finally notes that its jurisdiction is limited, under both the Zoning Code and the Home Rule Charter, to hearing and deciding (1) requests for variances, (2) requests for special exceptions, and (3) appeals in zoning

matters for any final order, requirement, decision, or determination made by [L&I] pursuant to the Zoning Code. Home Rule Charter at §5-1006; Zoning Code at §14-301(4). The effect and enforceability of the private agreement referenced by [Adams] and her attorney therefore are not within the [ZBA's] purview.

11. For all the above stated reasons, the [ZBA] concludes that the requested variance was properly granted.

ZBA's Conclusions of Law, Nos. 2, 6-11.

Adams appealed the ZBA's decision to the trial court. Yager intervened and filed a motion to quash the appeal, asserting that Adams was not an aggrieved person and, therefore, lacked standing. Following oral argument, the trial court affirmed the ZBA's decision granting Yager's application for a variance on the merits. The trial court failed to rule on the motion to quash. The trial court found that the ZBA's decision was supported by substantial evidence, and that the ZBA properly determined that the effect and enforceability of the NDA were outside of its jurisdiction. The trial court further determined that Adams's involvement in the NDA did not grant her aggrieved party standing to appeal the ZBA's decision. The trial court did not make a determination regarding Adams's standing as a person aggrieved by the ZBA's decision based on her home's proximity to the Property or her participation in the hearing before the ZBA. Adams appealed to this Court.

Following oral argument, this Court vacated and remanded to the trial court to determine whether Adams had standing to appeal from the ZBA's decision. *Adams v. Philadelphia Zoning Board of Adjustment* (Pa. Cmwlth., No. 534 C.D. 2017, filed August 30, 2018). We did not address the merits of Adams's appeal regarding whether Yager had met her burden of proving the requisite hardship. *Id.*

5

On remand, the trial court granted Yager's motion to quash, finding that Adams lacked standing to challenge the variance application. Adams again appealed to this Court.[3]

Adams now argues that she has standing to challenge the variance because of her home's proximity to the Property. Adams contends that because her home is only 250 feet away, she is sufficiently close to the Property to have standing, noting that "no case has ruled that an objector living only 250 feet away and on the same city block as the [Property] given a variance lacks sufficient proximity to be denied standing." Appellant's Brief at 22.

Yager argues that Adams is not an "aggrieved person" under the standards set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975), because she has suffered no direct, immediate, or substantial impact by the variance being granted. Yager asserts that aggrieved party status requires more than mere proximity to the Property. Yager argues that even assuming that Adams lives within 250 feet of the Property, Adams cannot see the parking spaces from her home, and therefore Adams is not directly impacted.

In order for a party to have standing to appeal a determination of the ZBA, she must demonstrate that she is an "aggrieved person." *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1149 (Pa. 2009). It is well established that to be "aggrieved," a party must show an interest that is substantial, direct, and immediate. *William Penn,* 346 A.2d at 280. For an interest to qualify as "substantial, there must be some discernible effect on some interest other than the abstract interest all citizens have in the outcome of the proceedings." *Spahn*, 977 A.2d at 1151. An

---

[3] In an appeal from the granting of a motion to quash, this Court's review is plenary. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Hearing Board of Adjustment of the City of Philadelphia*, 951 A.2d 398, 401 n.8 (Pa. Cmwlth. 2008).

6

interest is direct where the party can demonstrate some causation of harm to her interest. *Id.* To be considered immediate, a party's interest must have "a causal connection between the action complained of and the injury to the person challenging it." *Id.*

The proximity between a party's property interest and the property at issue may be sufficient to establish a perceivable adverse impact. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Hearing Board of Adjustment of the City of Philadelphia*, 951 A.2d 398, 404 (Pa. Cmwlth. 2008). It is well established that an adjoining property owner, who testifies in opposition to a variance request before the zoning board, has sufficient interest conferring standing to appeal the board's decision. *Id.* However, absent an assertion of a particular harm, standing has been denied to objectors with no property interest in the immediate vicinity. *Id.* Further, parties are not necessarily aggrieved merely because they participated in the hearing before the ZBA. *Scott v. City of Philadelphia, Zoning Board of Adjustment*, 126 A.3d 938, 949 (Pa. 2015).

In *Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 392 (Pa. Cmwlth. 2015),[4] this Court considered whether individual objectors had standing to appeal the granting of a variance for a sign. Despite living within three blocks, being able to see the sign that the variance granted from their homes, using the park across the street, and walking in the vicinity, this Court held that the objectors lacked standing. *Id.* at 396. The objectors were not adjoining property owners, did not live in the immediate vicinity of the sign, and failed to demonstrate standing based on a particular harm. The objectors failed to explain

---

[4] Interestingly, Adams was an objector in *Armstead* and was found not to have standing in that matter.

7

how the proposed illumination of the sign would cause injury or to what extent the illumination would affect the homeowners. *Id.* at 397-98.

Adams argues that she has standing based on the proximity of her home to the Property. Adams's home is between 250 and 350 feet away from the Property, and on the other side of the street – not adjoining or even catty-cornered to the Property. Adams's home's location down the block and across the street is not sufficiently close to the Property to confer standing based on proximity alone. *See Armstead*, 115 A.3d at 392; *Society Created to Reduce Urban Blight (SCRUB)*, 951 A.2d at 404.

Likewise, Adams has failed to articulate a particular harm that she will suffer by the proposed use of the Property for parking. *Id.* Adams's general concerns about the safety of individuals waiting for the bus near the Property and general resentment that allowing a parking pad "does nothing for the neighborhood," Notes of Testimony (N.T.), February 17, 2016, N.T. at 30, are "merely abstract interest[s] all citizens have in the outcome of the proceedings." *Spahn*, 977 A.2d at 1151.

Therefore, we affirm the trial court's order granting the motion to quash the appeal because Adams lacks standing.

_____
MICHAEL H. WOJCIK, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Roseanne Adams      :
                                        : No. 141 C.D. 2019

From the Decision of The Philadelphia  :
Zoning Board of Adjustment (No.26084)  :

# **O R D E R**

AND NOW, this 21st day of December, 2020, the order of the Court of Common Pleas of Philadelphia County, dated December 17, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

In Re:  Appeal of Roseanne Adams     :
                                  :
                                  :
From the Decision of The Philadelphia   :  No. 141 C.D. 2019
Zoning Board of Adjustment (No. 26084) :  Argued:  June 8, 2020

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE FIZZANO CANNON        FILED:  December 21, 2020

Because I disagree with the Majority's conclusion that Roseanne Adams lacks standing to object to the variance requested in the instant matter, I respectfully dissent.

As the Majority notes, to acquire standing to object to a variance request, an allegedly aggrieved party must show a substantial, direct, and immediate interest in the application beyond "the abstract interest all citizens have in the outcome of the proceedings." Majority Opinion at 6 (quoting *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1151 (Pa. 2009)).  Standing to object may be established by the proximity alone of a prospective objector's property to the property in question. *See Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Hearing Bd. of Adjustment of City of Phila.*, 951 A.2d 398, 404 (Pa. Cmwlth. 2008),

*aff'd sub nom. Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132 (Pa. 2009). Additionally, even prospective objectors whose property is outside the immediate area of the property in question may attain standing to object by asserting a particular harm. *See id.* I believe Adams has established these standing requirements.

First, Adams's home is within close proximity to the Property. This Court has determined that uncontradicted testimony establishing that prospective objectors residing within 450-600 feet of a contested use established the prospective objectors' standing. *See Appeal of Hoover*, 608 A.2d 607, 611 (Pa. Cmwlth. 1992); *compare with SCRUB*, 951 A.2d at 404 (finding a residence 1.2 miles away from proposed billboard insufficient to establish standing based on proximity). Adams testified that she lives at 1911 Hamilton Street, Philadelphia, where she has lived since 1994 and which is only 250 feet down the street from the Property.[1] *See* Reproduced Record (R.R.) at 37a, 41a. Accordingly, this uncontradicted testimony established adequately close proximity to confer standing upon Adams.

Further, Adams testified that she had previously spent months and thousands of dollars negotiating with a developer signatory a Neighborhood Development Agreement (NDA) that specifically restricted the Property to remain a landscaped area until it was developed for single-family residential use. *See* R.R. at 33a, 36a & 57a. While the Zoning Board of Adjustment cannot enforce this agreement, the NDA demonstrates Adams's substantial, direct, and immediate interest beyond an abstract interest in the outcome of the proceedings common to all citizens. *See Soc'y Hill Civic Ass'n v. Phila. Bd. of License & Inspection Review*, 905 A.2d 579, 586 (Pa. Cmwlth. 2006) (standing of civic association and members

_____

[1] Specifically, Adams testified that, in relation to the Property, her home is, "[a]s the crow flies maybe 250 feet, otherwise maybe 300-350 feet." Reproduced Record (R.R.) at 37a.

established where the purpose of the association was to promote preservation and restoration of historic buildings in the Society Hill area of Philadelphia, the association and members had negotiated for future preservation of the building façades in question, and the association and its members participated in public meetings on subject); *Pittsburgh Tr. for Cultural Res. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 604 A.2d 298 (Pa. Cmwlth. 1992) (trust determined to have standing as an aggrieved party where it was located in a building approximately 200 feet from the subject property and had made a substantial financial investment in the surrounding area). I would conclude that her interest in the NDA, when coupled with the proximity of her property to the Property, represents a particular harm that would confer standing upon Adams to object to the proposed variance.

*Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390 (Pa. Cmwlth. 2015), cited by the Majority, in which this Court determined that nine prospective objectors lacked standing to object to a variance for an illuminated sign, is distinguishable from the instant matter. In *Armstead*, the closest of the individual prospective objectors lived one and a half blocks, or 700-800 feet, from the proposed sign, and only one objector could actually see the sign. *Id.* at 393, 397-98. The Court did not find this distance to be adequately proximate to confer standing on its own. *Id.* at 397. Additionally, none of the objectors asserted an adequate particular harm that they would suffer as a result of the sign. *Id.* at 397-98. Because they did not live within the immediate vicinity of the proposed sign and had not asserted any particular harm resulting from the proposed sign, the Court determined that the prospective objectors had not established standing. *Id.* at 398. The instant matter, on the other hand, involves a property only 250 feet away from

the proposed variance, as well as a particular harm established by Adams's testimony regarding the NDA.

For the above reasons, I would conclude that Adams had standing to object to the Zoning Board of Adjustment's decision on the variance and, therefore, I respectfully dissent.

_____

CHRISTINE FIZZANO CANNON, Judge